No. 2,337.

THE PEOPLE OF THE STATE OF CALIFORNIA, RESPONDENT, *v.*
JAMES CAMPBELL, APPELLANT.

| 40 | 129 |
|----|-----|
| 78 | 87 |
| 78 | 88 |
| 78 | 389 |
| 40 | 129 |
| 94 | 386 |

CRIMINAL PRACTICE.—MURDER.—VERDICT OF JURY.—In a trial for murder if
the jury find the defendant guilty, they must expressly state the degree
of murder in their verdict.

IDEM.—Notwithstanding the crime charged in the indictment may be murder
in the first degree, a verdict that the jury find the defendant guilty of the
crime charged in the indictment, is not such a designation of the degree
of murder as the statute requires.

CRIMINAL PRACTICE.—ACCESSORY BEFORE THE FACT.—The accessory must be
indicted, tried and punished as a principal, but the particular acts which
establish that he aided and abetted the crime,.and thus became in law
a principal, must be stated in the indictment. (*People* v. *Schwartz*, 32
Cal., 160, approved.)

APPEAL from the District Court of the Seventh District,
Solano County.

Defendant's motion in arrest of judgment and for a new
trial was overruled, and defendant appealed from the judg-
ment, as well as from the order overruling his motion in
arrest of judgment and for a new trial.

The other facts are stated in the opinion.

*J. M. Coghlan* and *Wm. Wirt Pendegast,* for Appellant.

*First*—The Court erred in instructing the jury: " or if
you believe beyond a reasonable doubt, that Anne Robin-
son administered the poison that produced death, and that
the defendant at the bar, stood by, aiding, abetting or assist-
ing, or not being present advised or encouraged it, then the
defendant Campbell should be found guilty, and this too
under this indictment."

The indictment shows that appellant Campbell and
Anne Robinson were jointly indicted as principals. In
*People* v. *Trim,* (39 Cal. 75,) Mr. Justice Sprague lays
down what we conceive to be the true rule in regard to
accessories. " A party"—says that decision—" indicted
as a principal, cannot be convicted upon evidence only
tending to show that he was an accessory before the fact."

Under the provisions of our Criminal Practice Act, it has been held, in one or two cases, that an accessory before the fact could be convicted upon an indictment charging him as principal. But this, we apprehend, is against every rule of true pleading. An accessory before the fact shall be indicted, tried and punished as a principal; that is, he may be indicted and tried, even though the principal has been acquitted—and, if found guilty, he shall be punished as a principal; yet A. who advised and encouraged the killing of B. could hardly be convicted of B's murder upon an indictment charging that A. murdered B. by stabbing him with a knife, and that the murder was committed in Sacramento County, if it should turn out upon the trial that A. had never in his whole life been within one hundred miles of Sacramento County. The acts of an accessory constituting the offence, and which are required to be stated in the indictment, must, of necessity, be different from acts constituting a principal offender.

Our Criminal Code provides that conversion of property by a bailee, shall be deemed larceny and punished accordingly, but no one will contend that a party may be found guilty under an indictment charging larceny, if the evidence shows him only guilty of the offence of conversion of property by a bailee.

The Legislature may make the offences of accessory before the fact and of principal identical, as to their punishment, and as to their mode, manner and time of trial, but until it becomes unnecessary to set out in an indictment the offence charged to have been committed, we submit that analogy and good pleading demand that an accessory before the fact should no more be convicted upon an indictment charging him as principal, than that a party guilty of larceny shall be convicted upon an indictment charging with burglary.

It may be urged that there is nothing in the Bill of Exceptions or Record filed in this Court to show that this charge was pertinent or material; or that appellant Campbell was injured thereby. Had it not been pertinent and

material, the District Judge would not have given it upon his own volition. But be that as it may, the rule has been too often laid down by this Court, and it is too well supported by sound reason to admit of doubt, that when the instructions are erroneous under any and every state of facts, or under the facts and circumstances of the case as they seemed to have been assumed by the Court below, this Court will not hesitate to review the matter, notwithstanding there is no record of the evidence produced here. (*People* v. *Levinson*, 16 Cal., 100; *People* v. *Ybarra*, 17 Id. 171; *People* v. *King*, 27 Id. 507; *People* v. *Dick*, 32 Id. 213.

*Second*—The Court erred in overruling defendant's motion to vacate and set aside the verdict of the jury.

The Trial Jury did not specify in the verdict the degree of murder of which they find defendant guilty. The 21st Section of the Statute of Crimes and Punishments especially provides that "the jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, designate by their verdict, whether it be murder of the first or second degree."

Under the common law rule which governs in some of the older States in trials for murder, and which obtains in this State in all the minor felonies, a verdict of "guilty as charged," or simply "guilty," imports a conviction for the highest crime charged in the indictment; for in such cases the Grand Jury have the power to fix the degree of crime. But, under our statute, in cases of murder this power is entirely taken from them. They may indict for murder, but the law wisely leaves to the Trial Jury, untrammelled by any other power, the right, after a full investigation, to say what degree of murder has been committed.

All indictments for murder—no matter what mode of killing is charged, or what degree of the offence the Grand Jury may see fit to designate—must be treated upon the trial as simply indictments for murder; and the Trial Jury is the only power authorized by law, in this State, to designate the degree of murder of which they may find the person guilty. (*People* v. *Marquis*, 15 Cal. 38; *People* v. *King*,

*supra; People* v. *Nichols*, 34 Id. 217.) The Trial Jury, in this case, did not by their verdict designate, in so many words, the degree of murder of which they found defendant guilty.

The remaining point, and that which disposes of this whole question as to the validity of the verdict, may be thus stated: Can a Trial Jury, upon a trial for murder, designate the degree of the offence in a verdict of "guilty" by implication alone? And if they can so designate the degree, what acts of the jurors, and what papers pertaining to the case can be examined by this Court, in order to arrive at a conclusion as to what the jury intended to imply?

It was urged, in the oral argument of this case, that the indictment being referred to in the verdict, may be called into requisition in deciphering, or rather in building up a theory, upon which to base a *presumption* that the jury *intended to imply* that they found Campbell guilty of murder in the first degree.

The verdict reads, "guilty of the *crime* charged," not "guilty *as* charged." Now we submit, that any and every indictment charging murder in the first degree, necessarily includes and charges all the lesser grades of that offence. Which one then, of these several offences charged, do the jury mean to designate? Certainly not murder in the first degree, for enlightened as they were by argument of counsel as to the certain punishment of that degree of the offence, they yet, in their verdict, recommend the prisoner to the mercy of the Court. This recommendation in a legal sense, is, of course, a mere idle and meaningless thing, but if we are to go outside of the verdict to interpret the jury's meaning, does not this otherwise meaningless sentence in the verdict itself, loom up, almost to the proportions of a conclusive presumption that they meant to designate some degree of the offence in which the Court below could, in pronouncing sentence, exercise some discretion?

If this indictment is good for murder in the first degree (which we very much doubt), it is also good for murder in the second degree, or for manslaughter, or for an attempt

to commit murder; and a judgment for either of these offences, following a conviction under it, would be as legal and binding as a judgment under it for murder in the first degree. The fact that it is attempted to set out in the indictment a state of facts which, if true, would constitute murder in the first degree, or that the indictment charged that degree in plain and distinct terms, would not alter the rule. (Crim. Prac. Act, Sec. 424; *State* v. *Jones*, 20 Mo. 60; *People* v. *Dolan*, 9 Cal. 576).

Again, how are we to know what crimes the Trial Jury supposed were charged in the indictment? Will this Court interpret this indictment and say what degree or degrees of murder are here charged, and then decide that their interpretation is necessarily the same as that given by the twelve possibly illiterate men who tried this cause? If the degree of the crime is so designated, is it not this Court, instead of the Trial Jury, that designates the degree of the crime? It seems to us as an unanswerable argument against the validity of this judgment, that the degree of the offence is so obscurely stated that it cannot be with certainty understood, and can only be approximated to by a series of implications, drawn from other papers than the verdict; and that a more reasonable series of implications can be drawn from the same papers, upholding distinctly the theory that the jury did not intend to find Campbell guilty of murder in the first degree.

Again, the 21st Section of the Statute of Crimes and Punishments, says: that if a person indicted for murder confesses himself guilty, "the Court shall proceed to hear testimony, to determine the degree of the crime, and give sentence accordingly." Now if an indictment may charge murder in the first or second degree (and the charge of the degree is not surplusage), what further inquiry upon that subject may be had? If the indictment charge murder in the first degree, and the party confess he is guilty as charged in the indictment, is the Court to examine evidence to show that he is not guilty of what he confesses himself guilty and that he is guilty of another crime? And if an

indictment may charge the first degree, it may charge the second degree, and will it be said that the Court may, upon confession of guilty in the second degree, examine evidence and punish for a higher degree when a lower one alone is confessed? Or is this examination a mere farce, not intended to answer any useful purpose? The conclusion is irresistible, that in order to carry out the provisions of our criminal statutes, the rule laid down in Nichols' case (34 Cal. 217), that "when the Grand Jury attempts to designate the degree in an indictment for murder, such designation should be stricken out as surplusage," should be strictly upheld, whether designated in terms or by implication.

But we claim that, even if we concede all that is asked by the respondent, that is, that on a trial for murder, on a general verdict of "guilty," judgment should follow as upon conviction for the highest offence charged in the indictment, we would still be entitled to a reversal of the judgment in this case, based as it is upon a supposed conviction for murder in the first degree, for the reason that the indictment nowhere designates the degree charged.

It may be argued that the descriptive part of the indictment describes a state of facts which, if made out, would constitute murder in the first degree. But this we deny. "All murder" says the statute "committed by means of poison," etc., "shall be deemed murder in the first degree." All *murder*—not all *killing*. Aside from the fact that the descriptive part of this indictment should be stricken out as surplusage, (see Nichols' case, *supra*; Cronin's case, 34 Cal. 200; *People* v. *Murphy*, 39 Id. 52), we claim that the descriptive matter if proven would not more than support a conviction for manslaughter, in so negligently and carelessly administering poison, that death ensued therefrom. There is no intent to kill charged. It is charged that the poison was given with intent that Robinson should take it. It may be urged that the words "willfully and feloniously and of his malice aforethought" would imply an intent to kill. But even the first degree of murder is not charged. Murder is defined as the killing of a human being willfully

and feloniously and with malice aforethought, but those words describe both degrees. Add to this, deliberation and premeditation, and then we have murder in the first degree. This is a good indictment for manslaughter, but it lacks every essential of one for murder in any degree. A great many drugs used daily by physicians are poisons, and they are always given to the sick 'with intent that they should take them. Yet physicians by so doing commit no crime unless they so negligently and carelessly administer them that death would be produced; and in that case, we apprehend, that the form of indictment here used could not be well improved upon. The indictment neither charges nor describes murder in the first degree. If it rises to the dignity of an indictment for murder at all, it is either simply murder, or murder in the second degree, and in either case we are entitled to a reversal of the judgment herein, based as it is upon a supposed conviction for murder in the first degree.

*Jo Hamilton*, Attorney-General, for Respondent.

*First*—The 11th Section of the Act concerning Crimes and Punishments, provides that "he or she who thus aids, abets or assists, advises or encourages, shall be deemed and considered as a principal, and shall be punished accordingly."

It was clearly the intention of the law-makers, in enacting the section, to abolish the distinction between accessories before the fact and principals. They can be indicted together, tried together or separately as they elect; are subject to the same rules of testimony and, in every sense of the word, are co-defendants on trial for the same offence. If such is not the case, what could be the necessity of enacting the provision of the section above referred to? If the prosecution is not permitted to offer, or the jury directed to disregard all the evidence except that which tends to convict the defendant as principal, the provisions of the Act concerning Crimes and Punishments becomes a dead letter. The very nature of cases of this character demand a different kind of proof. Though the defendant may only be an

accessory before the fact, yet the statute says he may be indicted with and as a principal; and if so, then the proof tending to show his connection with and participation in the offence is admissible, and the instruction given was correct. This is the principle as laid down by this Court in *People* v. *Bearss*, (10 Cal. 68), and *People* v. *Glossaway*, (28 Id. 404.)

The instruction is good law if warranted by the testimony, and in the absence of all testimony in the record, this Court will not assume that the evidence did not warrant the instruction.

*Second*—The indictment charges the defendant with having committed the highest grade of offence. Under that indictment he might have been convicted of either murder in the second degree, or of manslaughter, or of the crime for which he was indicted, namely: murder in the first degree. If the jury had found for one of the lesser grades of offence, then they would have been bound, under the statute, to designate the degree. But if they found that he was "guilty as charged," that is, of the highest grade of offence, then the verdict was sufficiently clear and explicit. There is not the same reason for the necessity of stating the degree of the offence in their verdict as there would have been if he had been convicted of one of the lesser grades; for then they would depart from the indictment and find him guilty of an offence of which he was not charged, (which, by the provisions of the statute, they had a right to do) as it is necessary to state the offence in order that the Court and the prisoner may know for which crime he stands convicted; while, on the other hand, this would not be necessary if he were convicted of the highest crime, for he was indicted for that crime, and there could be no mistaking the intention of the jury if they returned a verdict of "guilty as charged in the indictment."

By turning to the indictment we find what is meant by such a verdict; that the murder was committed by means of poison; that it was done willfully, maliciously, etc. Such murder, says the statute, is murder in the first degree. It could be no other grade of offence, and the Court was jus-

tified in passing the sentence upon the verdict rendered. The whole record, in a criminal action, may be taken together. The judgment need not recite the facts contained in the other papers in the case. (*In re* Edward Ring, 28 Cal. 247; *Ex parte* Gibson, 31 Id. 619.)

The indictment having charged the crime of murder in the first degree in the language it did, no other offence than murder in the first degree under the statute was or could be charged. The verdict finding the defendant guilty as charged in the indictment, was a verdict for murder in the first degree. "When a term has two meanings, differing in the degree merely, it is to be understood in the larger sense whenever it occurs, unless it appears to have been used in the narrower sense, by some form of direct expression, or from the context, the nature of the subject or the *res gesta*." (*Miller* v. *Miller*, 33 Cal. 355.)

The construction of the statute directing the jury in their verdict to name the grade of the offence, is directory and not mandatory.

CROCKETT, J., delivered the opinion of the Court; RHODES, C. J., TEMPLE, J., and WALLACE, J., concurring:

The defendant was indicted, jointly with one Anne Robbinson, for the murder of Jabez Robinson, alleged to have been perpetrated by administering poison to him. The defendant was separately tried and convicted, and is under a sentence of death, pronounced by the Court; from which judgment he has appealed to this Court. On the trial, the jury rendered a verdict finding him " guilty of, the crime charged in the indictment," and recommended him to the mercy of the Court, but did not specify the degree of murder of which they found him guilty. The defendant moved an arrest of judgment, on the ground that the verdict was insufficient on account of its omission to specify the degree of murder. I think the objection was well taken, and that the Court should have set aside the verdict. Section 21 of of the Act concerning Crimes and Punishments expressly provides that "the jury before whom any person indicted

for murder shall be tried, shall, if they find such person guilty thereof, designate by their verdict whether it be murder of the first or second degree." This provision is found in the same section, which defines the degrees of murder, and in which it is provided that murder caused by poison, torture, lying in wait, or any other kind of willful, deliberate and premeditated killing, shall be murder in the first degree. After defining the distinction between murder in the first and second degrees, the section proceeds to enact that in all prosecutions for murder, if the jury shall find the defendant guilty, the verdict shall specify the degree of murder. This injunction of the statute is not limited to any particular class of prosecutions for murder. On the contrary, it is made obligatory on all juries "before whom any person indicted for murder shall be tried." It establishes a rule to which there is to be no exception, and the Courts have no authority to create an exception when the statute makes none.

We have no right to disregard a positive requirement of the statute, as it is not our province to make laws, but to expound them. I do not understand the Attorney-General to claim that Courts and juries may, in any prosecution for murder, disregard this provision, or that any verdict of guilty in a murder case will be valid unless it designates in some sufficient manner the degree of murder of which the defendant is guilty. But his argument is, that, when it appears from the indictment that the murder was perpetrated by means of poison—which necessarily implies deliberation and premeditation—it is not possible, from the nature of the case, that the accused could be lawfully convicted of murder in the second degree, which differs from murder in the first degree only in the particular that the former lacks the element of deliberation and premeditation, except in the case of murder committed in an attempt to commit rape and several other specified crimes, in which exceptional cases it is murder in the first degree, although it was committed without premeditation. He insists, therefore, that when the murder is charged to have been committed

by means of poison, torture, or lying in wait, which neces-
sarily imply deliberation, and when the verdict is that he
is "guilty of the crime charged in the indictment," this is a
sufficient designation by the verdict of the degree of mur-
der, for the reason that under the indictment he could not
lawfully be convicted of any other crime than murder in
the first degree, and the verdict, therefore, imports, *ex vi*
*termini*, that the jury finds him to be guilty of that crime.
The provision of the statute is that "the jury shall design-
ate by their verdict whether it be murder of the first or
second degree." The word "designate," as here employed,
does not imply that it will be sufficient for the jury to in-
timate or give some vague hint as to the degree of murder
of which the defendant is found guilty; but it is equivalent
to the words "express" or "declare," and it was evi-
dently intended that the jury should expressly state the de-
gree of murder in the verdict so that nothing should be
left to implication on that point. If it be sufficient for
the verdict to "designate" the degree of the crime only by
reference to the indictment, it would be equally good in
such a case simply to find the defendant "guilty," without
any express reference to the indictment; for a verdict of
"guilty," without other words, would, in such case, be
held to mean that he was guilty as charged in the indict-
ment. The addition of these words to the verdict would
have no significance, and would add no force to it as a des-
ignation of the degree of the crime. The unavoidable re-
sult of this process of reasoning would be that in an indict-
ment for murder, alleged to have been perpetrated by
means of poison, torture, lying in wait, and all that class
of premeditated murder, the jury need not "designate by
their verdict whether it be murder of the first or second
degree," except by a simple verdict of guilty, which, coupled
with the indictment, would "designate" the crime as murder
in the first degree. But this construction would annul the
very letter of the statute, which, as we have seen, requires
the jury to "designate," or in other words, to express or
declare by their verdict the degree of the crime. However

absurd it may, at the first blush, appear to be to require the jury to designate the degree of the crime, when it appears on the face of the indictment that the offense charged has but one degree, there are plausible and, perhaps, very sound reasons for this requirement. No jury can well be ignorant of the fact that a conviction for murder in the first degree will be followed by the death penalty; and it may well be that the verdict is required to specify, in such a case, the degree of the crime, in order that it may distinctly appear that, in rendering the verdict, the jury was fully aware of the magnitude of the penalty which was to follow, and that they had, therefore, bestowed upon the case the careful and solemn deliberation demanded in a cause involving the life of a human being. This suggestion appears to be entitled to some weight, from the fact that in this cause the jury recommended the defendant to the mercy of the Court, which they must have known would be a vain and superfluous proceeding if, by their verdict, they had convicted the accused of murder in the first degree; in which event it would not be in the power of the Court to extend any mercy to the defendant. This circumstance affords just ground for the belief that the jury may have misapprehended the legal effect of their verdict, and may not have found it, if they had supposed it was to convict the accused for murder in the first degree, and it was necessarily to be followed by a sentence of death. We allude to this recommendation of the jury, not as affording a ground for setting aside the verdict, but only as an illustration of the policy which may have dictated the provision which requires the verdict in all prosecutions for murder to specify the degree of the crime. But whatever may have been the reasons for this enactment, it is sufficient for the Courts to know that the law is so written and it is their duty to enforce it.

There is in this record no statement of the evidence produced at the trial, but we infer from the instructions of the Court to the jury, and from the briefs of counsel, that there was evidence tending to show that the defendant, if guilty at all, was not a principal in the crime but only an ac-

cessory before the fact. But he was indicted and tried as a principal, and the Court instructed the jury in effect, that that he might be indicted, tried and convicted as a principal, even though it appeared he was only an accessory before the fact. This was error. We had occasion in the case of *People* v. *Trim*, (39 Cal. 75,) to consider this question, and held that under our Criminal Practice Act, though an accessory before the fact is liable to the same punishment as the principal, he must be indicted and charged as an accessory, and not as a principal. We have seen no reason to question the soundness of this view of the law.

Judgment reversed, and cause remanded for a new trial.

SPRAGUE, J., expressed no opinion.

CROCKETT, J., also delivered the following supplemental opinion, in which TEMPLE, J., WALLACE, J., and RHODES, C. J., concurred:

In the opinion delivered in this case at the present term, and in the case of the *People* v. *Trim*, (39 Cal. 75,) we held that, though an accessory before the fact, under the statutes of this State, may be tried, convicted and punished as a principal, nevertheless the indictment against him must specify that he aided and abetted the crime, and must state in what particular manner he aided and abetted it; and that if the indictment charge that he in person perpetrated the crime, it will not be sustained by proof that he only aided and abetted it, or, in other words, was an accessory before the fact. Since these decisions were rendered, our attention has been specially called to Section 255 of the Criminal Practice Act, under the belief that it may have escaped our observation; and, in order to avoid all misapprehension in respect to an important point in practice, we deem it proper to say that we find nothing in that section inconsistent with the conclusion already announced. The sole purpose of that section was to abolish all distinction, in cases of felony, between an accessory before the fact and the principal in respect to the grade of

the offence and its punishment. The accessory is to be indicted, tried and punished as a principal; nevertheless, the particular acts which establish that he aided and abetted the crime, and thus became, in law, a principal, must be stated in the indictment. When these facts are averred and proved, the law considers the accused to be a principal, and condemns him accordingly. But Section 237 of the Criminal Practice Act provides that the indictment shall contain "a statement of the *acts* constituting the offence," and this important requirement would be wholly ignored if an indictment which alleges that the defendant in person committed the crime would be supported by proof that he only aided and abetted it.

It is a fundamental principle in criminal jurisprudence that the accused is entitled to be informed by the indictment of the particular *acts* which he is alleged to have committed, as constituting the offence; and if he, in fact, only aided and abetted the crime, the fact must be so stated in the indictment. He then comes to the trial with a knowledge of the acts which are imputed to him. But, on the opposite theory, the indictment would charge him with one act or series of acts, and he might be convicted on proof of a wholly different act or series of acts. We can attribute no such unreasonable result to our legislation on this subject. We think the true rule on this subject is laid down in *People* v. *Schwartz,* (32 Cal. 160.)

SPRAGUE, J., expressed no opinion.