THE PEOPLE v. RIVERA, *alias* "PANCHITO."

APPEAL from the District Court of Guayama.

No. 3.—Decided June 25, 1904.

INFORMATION—COPY TO BE DELIVERED TO DEFENDANT.—There is no provision in the Code of Criminal Procedure which requires that the copy of the information which is to be delivered to the defendant should be signed by the secretary of the court and sworn to by the *fiscal,* it being only the original which should be signed and sworn to by the *fiscal.*

GRAND JURY—INSULAR COURTS.—The provisions of Fifth and Fourteenth Amendments to the Constitution of the United States are not extended to Porto Rico, and an indictment by a grand jury is unnecessary.

CONSTITUTION OF THE UNITED STATES—TERRITORIES.—The affirmative action of Congress is necessary in order to extend the Constitution of the United States to a Territory.

ID.—TREATY OF PARIS—ORGANIC ACT—STATUTE OF THE UNITED STATES.—Neither in the Treaty of Paris nor in the Organic Act is any provision to be found extending to Porto Rico the provisions of the Constitution of the United States, all of the laws of Porto Rico, in so far as they are not in conflict with the laws of the United States not locally inapplicable, having been left in full force and effect.

INFORMATION—HOW IT SHOULD BE PRESENTED.—The information shall allege only one offense, but the same may be alleged in different terms and under distinct counts; but when the offense has been committed by the use of different means the means can be alleged alternatively in the same court.

ID.—PLEA OF THE DEFENDANT OF ONCE IN JEOPARDY FOR THE SAME OFFENSE.—The plea of former jeopardy for the same offense is properly made at the time of the arraignment of the defendant.

ID.—DISMISSAL OF THE INFORMATION—FELONY—MISDEMEANOR.—The court may either upon its own motion, or upon the application of the prosecuting attorney, order an information to be dismissed; but such dismissal is a bar to any other prosecution for the same offense in cases of misdemeanor, but not so in cases of felony.

EVIDENCE—CONFESSION OF DEFENDANT.—The confessions of a defendant to other persons in regard to the crime may be introduced against him, provided they are freely and voluntarily made, without being extorted from him by undue influence or by promises held out to him by some one in authority.

ID.—HEARSAY TESTIMONY.—The testimony of witnesses who detailed to the court the confessions made by the defendant to them cannot be considered as hearsay, but is, on the contrary, direct evidence of the acts of the defendant, and is admissible.

ID.—The only objections which the defendant may interpose to the admission of testimony in regard to the confessions made by him of the offense are that he was under duress at the time of making them, or that he was acting under the influence of hopes or promises held out to him in the event of making a confession.

MURDER—DEGREES OF THE CRIME—MANSLAUGHTER—INSTRUCTIONS TO THE JURY.—In a prosecution for murder, even though the facts of the case clearly constitute the crime of murder in the first degree, the court should nevertheless instruct the jury with respect to murder in the first and second degrees and manslaughter, in order that the jury may make an intelligent distinction between the different degrees of said crime.

ID.—In their instructions to the jury courts should confine themselves to the facts of the case and to the law applicable thereto, and should not instruct the jury with regard to facts which have not been proved on the trial, nor with regard to laws which have no application to the case.

ID.—VERDICT—DEGREE.—The jury should designate in their verdict the degree of the crime of which they find the defendant guilty.

ID.—OBJECTIONS TO CHARGE—BILL OF EXCEPTIONS—APPEAL.—If the defendant wishes to present objections to the charge given to the jury by the trial court, he should embody the language of the charge in a bill of exceptions or include it in proper form in the transcript of the record, so that the objections thereto may be brought up and considered and decided upon the appeal.

ID.—In the absence of a bill of exceptions showing the charge of the trial court, the presumption is that the charge of the court was correct.

ID.—WRITTEN INSTRUCTIONS.—Although there is nothing in the statute which requires the instructions of the court to the jury to be given in writing, nevertheless, in capital cases, the better practice is to submit the instructions to the jury in writing, in order to more carefully conserve the rights of the defendant, and to more effectually aid the jury in the consideration of such instructions, and to more readily facilitate the correction of errors in the same on review by the appellate court.

ID.—INSTRUCTIONS SUBMITTED BY COUNSEL.—In proper cases the attorneys should aid the court in giving its charge to the jury by submitting for its consideration in writing drafts of instructions applicable to the case and necessary to guide the jury in finding a correct verdict.

APPEAL.—The Supreme Court has power to consider and decide points of defense

which appear in the record, especially such as go to the foundation of the case, even though they have not been alleged by the defendant.

VERDICT OF THE JURY.—The verdict of the jury should not be pronounced orally, but should be written in proper form and signed by their foreman.

ID.—The statute does not prescribe any definite or special form for the verdict of the jury, but it is necessary that it should be expressed in plain and intelligible words, so that its meaning may be readily understood and cannot be misinterpreted to the prejudice of the defendant.

ID.—DEGREE OF THE CRIME.—Whenever it is necessary to make a distinction be-between the various degrees of a crime, as in cases of murder, the jury must necessarily find the degree of the crime of which the defendant is guilty.

ID.—VERDICT CONTRARY TO LAW—NEW TRIAL.—Where the jury, in cases in which it should do so, fails to determine in the verdict the degree of the crime of which it finds the defendant guilty, the verdict is contrary to law and in such cases justifies the granting of a new trial, even though it should not be held to require it.

CONSTRUCTION OF STATUTES.—It is a well-established principle, both in American and Spanish law that, when a statute is adopted by one state from another, the construction put upon it by the courts of the latter is entitled to great weight in the interpretation to be given it by the courts of the former; it being presumed that the Legislature had such construction in view in the passage of the act when adopting the language of the statute.

The facts are stated in the opinion.

*Messrs. Muñoz Morales* and *Falcón,* for appellant.

*Mr. del Toro, Fiscal,* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

The defendant, who is the appellant herein, was on the 21st day of November, 1903, accused by information duly presented by the *fiscal* of the Humacao district, which reads as follows:

"The undersigned *fiscal* (prosecuting attorney) appears before the above-mentioned tribunal and in due form respectfully alleges: That Francisco Rivera, *alias* 'Panchito,' on the 15th day of July of the year 1902, within the said judicial district, illegally and with malice aforethought intentionally killed and assassinated Severo Lorenzo by shots and with a revolver. And the undersigned *fiscal* (prosecuting attorney) alleges further: That the said Francisco Rivera, *alias* 'Panchito,' about the 15th of July, 1902, within the said judicial district, illegally and with malice aforethought, intentionally killed and assassinated Severo Lorenzo by stabbing him with a dagger; the undersigned *fiscal* (prosecuting attorney) alleges further: That the said Francisco Ri-

vera, *alias* 'Panchito,' in this judicial district, about the 15th day of July, 1902, illegally and with malice aforethought, intentionally killed and assassinated Severo Lorenzo by shots from a revolver and stabbing him with a dagger, in the perpetration of an attempted robbery by said accused on the said Lorenzo; contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the People of Porto Rico.''

The accused was duly arraigned and pleaded not guilty, and on the trial was convicted before a jury and sentenced to suffer death. From this judgment he appealed to this court, and the record was filed herein on the 30th day of January, 1904. It consists of 35 typewritten pages, and is prepared in better form, and shows a case better defended than any criminal case which has yet fallen under my observation in this court. The bill of exceptions is well prepared, and sets out the points relied upon by the appellant fairly well, as to clearness and directness. Other counsel has been employed on appeal, some of the points made in the bill of exceptions were abandoned by him in the argument, and others presented not contained therein. All the points made both in the bill of exceptions and on the oral hearing by either counsel, who tried the case in this court and in the court below, will be considered, though not in the order in which they are presented by either one or the other. An effort will be made to take them up in their logical order, and with that view we will consider *first* the objections made to the information. These are three in number. The first is set out in the bill of exceptions substantially as follows:

''The jury, having been impaneled on the 21st day of December, and before commencing the introduction of evidence, the attorney for the defendant, relying upon the second paragraph of article 145 of the Code of Criminal Procedure, requests the court to dismiss the information because the copy thereof which was delivered to the defendant does not appear to have been signed by the secretary when sworn to by the *fiscal.*''

This objection was not presented by the attorney for the defendant in this court, but was argued by the *fiscal* in his brief. By an examination of the Code, in the article and paragraph referred to, it will be found that there is no requirement that the copy which is delivered to the defendant shall be signed by the secretary nor sworn to by the *fiscal*. It is only the original information which is filed in the court and becomes a part of the record which needs to be signed and sworn to by the *fiscal*, and on reference to the record it is found that this requirement was complied with; hence, there is nothing in this objection requiring further attention from this court.

The next objection to the information was presented for the first time by the counsel for the appellant in this court and is briefly set forth as follows:

"There is another most important reason which also invalidates the judgment. The American Constitution is not in fact applied to Porto Rico, but it cannot be denied that according to the Treaty of Paris this Island is an American possession, and it is perfectly well known that it is not possible to pass or to undertake to effect a legislative act contrary to the American Constitution, and that sections Fifth and Fourteenth of the Amendments to the Constitution provide 'That no person shall be held to answer for a capital, or otherwise, infamous crime, unless on a presentment or indictment of a Grand Jury,' and that 'no person shall be deprived of life without due process of law.'"

In other words, it is contended by counsel that the Fifth and Fourteenth Amendments to the Constitution of the United States guaranteeing to a defendant accused of a capital or otherwise infamous crime the right to be indicted by a grand jury and to be tried by due process of law, are in force in Porto Rico. These points have been repeatedly discussed and decided by this court in the negative, especially in the case of *Hobart S. Bird, Ex parte,* 5 P. R. Rep., 505, and that of *Pedro Diaz, Ex parte,* 5 P. R. Rep., 415, heard and decided in this court on *habeas corpus.* In numberous cases it has

been held that the Constitution of the United States has not
as yet been extended to Porto Rico and that affirmative action
is necessary on the part of Congress to place this Island
under the complete protection of the American Constitution.
Reference may be had to the *Insular Tariff Cases* in 182 U. S.,
pp. 1 *et seq.,* and to the case of *Mankichi v. Hawaii,* 190 U. S.,
p. 197. In all of these cases reference is made to a list of
decisions which settles this question. In the Mankichi case,
although in the act of Congress by which the Hawaiian Islands
were annexed to the United States it was provided that the
municipal laws of that republic should continue in force, ex-
cept where they were contrary to the Constitution of the
United States, still it was held that it was not intended by
said act to require criminals to be prosecuted on the indict-
ment of a grand jury or to be tried and convicted by the
unanimous verdict of a petit jury, until the act of Congress
was passed, giving to said republic, as a part of the American
Nation, a territorial form of govenment. This is a much
stronger case than the one at bar, because neither in the
Treaty of Paris nor in the Organic Act giving to this Island
a civil government is anything said about extending the pro-
visions of the Constituton of the United States to the same;
but all laws theretofore existing in the Island were continued
in force, except wherein they were found to be contrary to the
laws of the United States not inapplicable here. Then, if
Mankichi could not claim the benefit of these Amendments to
the Constitution of the United States, certainly Rivera can-
not, for the claim of the former to such a right is much
stronger than that of the latter.

Since writing the above paragraph a case has fallen under
my attention, noticed in a recent number of the New York
Sun. It is the case of Dorr and O'Brien, appealed from the
Supreme Court of the Philippines, on conviction of libel, in
which they had demanded a jury trial, claiming the right
under the Constitution of the United States, which was denied

them under the local statutes. Mr. Justice Day, speaking for a majority of the Supreme Court of the United States, holds that Congress, in framing laws for outlying territories belonging to the United States, is not obliged to establish the jury system by affirmative legislation; and that the power given to Congress to govern territories, implied in the right to acquire them, does not require that body to enact for ceded territory, not made a part of the United States by constitutional action, a system of laws which shall include the right of trial by jury; and that the Constitution does not, without legislation and of its own force, carry such right to territory so situated. This decision is just as applicable to Porto Rico as to the Philippines and may be regarded as definitely settling this long-mooted question, in accordance with the principles repeatedly announced from this bench.

The last objection made to the information is that it charges more than one offense, in that in the first place it accuses him of having killed and assassinated Severo Lorenzo with a pistol and in the second place of having killed and assassinated Severo Lorenzo with a dagger and in the third place with having killed and assassinted Severo Lorenzo with a dagger and a revolver. This objection is not introduced by the attorney for the appellant in his argument before this court, but it is answered by the *fiscal* in his brief. It will be seen by consulting paragraph second of article 153 of the Code of Criminal Procedure, upon which counsel for the appellant relies, that this case does not fall within the purview of that statute. This article must be taken in connection with article 77 of the same code, which provides that the information shall contain only one offense, but the same offense can be expressed in different terms and under distinct counts; but when the offense has been committed by the use of different means the means can be alleged alternatively. This information was drawn under the well-known practice in the United States of presenting the same offense in different aspects, under differ-

ent counts, and is not obnoxious to the objection that it charges more than one offense. Only one offense is charged, although it is set forth in different counts, either of which could be proved, and possibly all three. Then the information presented against the defendant in this case was properly drawn and is not subject to any of the objections made against it, either in the court below or in this court.

The *second* point made by the appellant in this case is that he had before been put in jeopardy for the same offense, a former indictment having been presented against him and other persons, which the *fiscal* saw fit to dismiss, preparing a new indictment against this defendant alone. This plea of former jeopardy was properly made on the 23d of November, at the time of the arraignment of the defendant, and overruled by the court. It was again presented on the 4th of December, on his motion for a new trial, and again denied. This appears by the bill of exceptions on page 33 of the record. This point was argued also by appellant's counsel in this court and answered by the *fiscal.* The fourth paragraph of section 169 of the Code of Criminal Procedure reads as follows:

"When the defendant is convicted or acquitted or has been once placed in jeopardy upon an information, the conviction, acquittal, or jeopardy is a bar to another information for the offense charged in the former or for an attempt to commit the same or for an offense necessarily included therein, of which he might have been convicted under that information."

This plea was properly made under the fourth paragraph of section 162, but these articles must be taken in connection with sections 451 and 452 of the same code, which read as follows:

"Section 451.—The court may either of its own motion or upon the application of the prosecuting attorney or in furtherance of justice order an action or an information to be dismissed. The reasons

of the dismissal must be set forth in an order entered upon the minutes.

"Section 452.—An order for the dismissal of the action, as provided in this chapter, is a bar to any other prosecution for the same offense, if it is a misdemeanor, but it is not a bar if the offense is a felony."

The court may either upon its own motion or upon the application of the prosecuting attorney order an action or an information to be dismissed. The reasons must be set forth in the order. An action, if dismissed, is a bar to any other prosecution for the same offense, if it is a misdemeanor, but it is not a bar if it is a felony. Of course, this being a murder case, the crime charged is a felony, especially in view of the fact that the defendant has been sentenced to death, and of course section 452 applies to the former dismissal and is not a bar to this prosecution.

The *third* point made by the counsel for the appellant is that confessions supposed to have been made by him to several witnesses were put in evidence against him. An attempt was made to make this point in the court below and in this court, although the question is not very clearly presented and is based on section 164 of the Code of Criminal Procedure, which has no reference whatever to the question, but provides how a plea of guilty shall be presented should the defendant wish to make one. This error on the part of counsel is superinduced by the habit among the local bar of referring every question and every point made in defense or in the presentation of a case to a particular section of the Code. There is nothing in the Code of Porto Rico in regard to confessions of the defendant, and consequently it is impossible for counsel to put his finger on the particular section which might have been violated in the trial of the case. However, the defendant is entitled to the benefits of the law in this feature of the case, and the failure of his counsel clearly to present the matter will not be counted against him in this discussion. It is well set-

tled by the elementary writers on evidence under the common law system that the confessions of a defendant in regard to the crime of which he is accused can be introduced against him, provided they are freely and voluntarily made, without being extorted from him by undue influence or by promises held out to him by some one in authority, or by the hope of a lighter punishment, or some benefit to be derived by making them. An examination of the bill of exceptions in this case will disclose that the several witnesses testifying to the confessions were the *alcalde* of Guayama, the justice of the peace, a lieutenant of police, and a guardsman. Although the witnesses were persons who may be said to be in authority, no promises were held out to the defendant, and no threats were made, and he was not under duress at the time of making the confessions, the same being freely and voluntarily given to the witness; and that consequently whatever confessions he may have made were entirely admissible as evidence against him and that the court in overruling the objections to this evidence committed no error of which the defendant can complain. Judge Cooley discusses the subject very ably in his work on Constitutional Limitations, as follows:

"But a far more important requirement is that the proceeding to establish guilt shall not be inquisitorial. A peculiar excellence of the common-law system of trial over that which has prevailed in other civilized countries consists in the fact that the accused is never compelled to give evidence against himself. Much as there was in that system that was heartless and cruel, it recognized fully the dangerous and utterly untrustworthy character of extorted confessions and was never subject to the reproach that it gave judgment upon them.

"It is the law in some of the States, when a person is charged with crime and is brought before an examining magistrate, and the witnesses in support of the charge have been heard, that the prisoner may also make a statement concerning the transaction charged against him and that this may be used against him on the trial if supposed to have a tendency to establish guilt. But the prisoner is to be first cautioned that he is under no obligation to answer any questions put to him unless he chooses and that whatever he says and does must be

entirely voluntary. He is also to be allowed the presence and advice of counsel; and if that privilege is denied him, it may be sufficient reason for discrediting any damaging statements he may have made. When, however, the statute has been complied with, and no species of coercion appears to have been employed, the statement the prisoner may have made is evidence which can be used against him on his trial and is generally entitled to great weight. And in any other case except treason the confession of the accused may be received in evidence to establish his guilt, provided no circumstance accompanies the making of it which should detract from its weight in producing conviction.

"But to make it admissible in any case it ought to appear that it was made voluntarily and that no motives of hope or fear were employed to induce the accused to confess. The evidence ought to be clear and satisfactory that the prisoner was neither threatened nor cajoled into admitting what very possibly was untrue. Under the excitement of a charge of crime, coolness and self-possession are to be looked for in very few persons; and however strongly we may reason with ourselves that no one will confess a heinous offense of which he is not guilty, the records of criminal courts bear abundant testimony to the contrary. If confessions could prove a crime beyond doubt, no act which was ever punished criminally would be better established than witchcraft; and the judicial executions which have been justified by such confessions ought to constitute a solemn warning against the too ready reliance upon confessions as proof of guilt in any case. As Mr. Justice Parke several times averred while holding one of his circuits, 'Too great weight ought not to be attached to evidence of what a party has been supposed to have said, as it very frequently happens not only that the witness has misunderstood what the party has said, but that by unintentionally altering a few of the expressions really used, he gives an effect to the statement completely at variance with what the party really did say.' And when the admission is full and positive it perhaps quite as often happens that it has been made under the influence of the terrible fear excited by the charge, and in the hope that confession may ward off some of the consequences likely to follow if guilt were persistently denied.

"A confession alone ought not to be sufficient evidence of the *corpus delicti*. There should be other proof that a crime has actually been committed; and the confession should only be allowed for the purpose of connecting the defendant with the offense. And if the party's hopes or fears are operated upon to induce him to make it,

this fact will be sufficient to preclude the confession being received; the rule upon this subject being so strict that even saying to the prisoner it will be better for him to confess has been decided to be a holding out of such inducements to confession, especially when said by a person having a prisoner in custody, as should render the statement obtained by means of it inadmissible. If, however, the statements have been made before the confession which were likely to do away with the effect of the inducements, so that the accused cannot be supposed to have acted under their influence, the confession may be received in evidence; but the showing ought to be very satisfactory on this point before the court should presume that the prisoner's hopes did not still cling to, or his fears dwell upon, the first inducements."

Reference may be made to the following authorities, which also lay down the common law rules in regard to confessions made by a defendant and their use as evidence against him. (*Hopt v. Utah,* 110 U. S., 574; *People v. MacMahen,* 15 N. Y., 384; *People v. Thomas,* 9 Mich. 314; *Williams v. Commonwealth,* 27 Gratt., 997; *Jordan v. State,* 32 Miss., 382; *Runnels v. State,* 28 Ark., 121; *Miller v. People,* 39 Ill., 457; *State v. Holt,* 121 Mass.; 61; *State v. Curtis,* 97 Mass., 574; State v. *Mitchell* 117 Mass., 431; *Corley v. State,* 50 Ark., 305; *Thompson v. Commonwealth,* 20 Gratt., 724; *State v. Lawhorne,* 66 N. C., 538; *Thompson v. State,* 19 Ft. App., 593; *State v. Garvey,* 28 La. Ann., 955; 1 Greenleaf on Evidence, sec. 214, and cases cited).

The testimony of witnesses who detailed to the court the confessions made by the defendant to them cannot be considered as hearsay, but was direct evidence of the acts of the defendant, which can be counted against him on the trial. Should the defendant wish to exclude confessions which are proposed to be introduced against him, he should bring them within one of the exceptions laid down by the law as expounded by the elementary writers. That is to say, he should show that he was under duress or that he was acting under the influence of hopes or promises held out to him in the event of making a confession.

The *fourth* objection presented by the appellant in this case, and made by him both in the court below and in this court, is that the judge who tried the case committed errors in his charge to the jury in not setting out and defining the different degrees of murder and the offense of manslaughter. So far as the same is disclosed in the record, the defendant, if guilty at all, was guilty of murder in the first degree, because the murder of Severo Lorenzo was committed for the purpose of robbery and by lying in wait. His assailants ambushed him on the road from Guayama, and after having killed him by shots from a revolver and thrusts from a dagger, they robbed him of money and checks which he had upon his person, thus making the crime clearly murder in the first degree as defined by our statutes (Penal Code, sec. 201, Rev. Stat., p. 519). Nothwithstanding these facts the court should have given a charge to the jury, defining murder in the first degree, murder in the second degree, and perhaps manslaughter, and have defined and explained those crimes to them. The court in every case should be limited in giving instructions to the jury by the law and by the facts, and apply the law to the facts in order that the jury may be fully instructed within the limits of the case; and to go outside of the case, as made by the record, and charge the jury in regard to facts which are not proved, or law which is not pertinent to the case on trial, only tends to confuse their minds and possibly to lead them into an erroneous verdict. But the statute clearly requires the jury to find in their verdict, if they convict the defendant, the degree of murder of which he is held to be guilty; and in order for them to do this, it is necessary to be properly instructed by the court. (See Code of Criminal Procedure, sec. 284, hereinafter quoted). Then it is clear that such a charge as that contended for by the defendant should have been given by the judge to the jury. But there is nothing in the record to show what the charge of the judge was; for all that the record discloses he may have charged the jury defining mur-

der in the first degree, murder in the second degree, and manslaughter, and may have set out all the particulars of the evidence necessary to constitute these crimes, after full explanations, and may have left it to them to decide whether or not the defendant was guilty of either of those degrees or classes of homicide, or not guilty at all. Had the defendant wished to present objections to the charge of the trial court before this court on appeal, he should have embodied the language of the charge in his bill of exceptions, or brought it up in some other method so that it could be considered and reviewed by this court. Having failed to do this, the presumption must be indulged that the charge of the court was correct, and no complaint can be successfully made of the same. It may be remarked in passing that from indications in the record, although it does not positively so appear, it may be inferred that the charge of the court was delivered to the jury orally. If such was the case, it is to be said that such a practice should not be encouraged. Although there is nothing in the statute absolutely requiring the charge of the court to be in writing, yet such is the far better practice in all capital cases. Counsel should in all proper cases aid the court in the discharge of this duty by submitting for consideration drafts of instructions thought by them to be applicable to the case and necessary to guide the jury in finding a correct verdict. In trials of minor felonies and misdemeanors, oral charges are admissible; but in capital cases they should be reduced to writing and read to the jury, in order more carefully to conserve the rights of the accused, and to more effectually aid the jury in consideration of the case in their retirement, and to more readily facilitate corrections of errors in the same on review by the appellate court.

The *fifth* objection is to the form of the verdict rendered by the jury under the instructions of the court. The same remarks in regard to this point may be made as were made in regard to the third mentioned herein. It is not clearly pre-

sented to this court whether or not the defendant complains
of the verdict, nor is it shown what his complaint may be in
regard thereto; but under the statutory laws of this Island,
and especially under the act of the 12th of March, 1903, we
feel it to be our duty to take into consideration all the points
of defense appearing in the record, especially such as go to
the foundation of the case; and we will review the verdict of
the jury in order to see if the defendant has been deprived of
any substantial right. This court has been informed that the
jury in this case, in rendering their verdict, merely pro-
nounced orally through their foreman in open court the word
*"culpable"* (guilty). The same remarks hereinbefore made
in regard to verbal charges, given by the judge to the jury,
will apply to this method of rendering verdicts. The findings
of the jury should be written out in proper form by them, in
their retirement, and signed by their foreman, in order that all
may agree to it and that there may be no doubt or question in
regard to its substance or meaning. Especially is this neces-
sary in a capital case. No man should lose his life unless in
strict compliance with all the forms prescribed by law. But
let us examine the statutes concerning verdicts. Section 284
of the Code of Criminal Procedure of Porto Rico reads as
follows:

"Section 284.—Whenever a crime is distinguished into degrees,
the jury, if they convict the defendant, must find the degree of the
crime of which he is guilty."

In this case it appears that the verdict of the jury con-
sisted of the single word *"guilty,"* without saying whether
the defendant was guilty of murder in the first degree or mur-
der in the second degree or manslaughter. Did the verdict
thereby fall within the meaning of the sixth paragraph of
section 303 of the Code of Criminal Procedure, which says a
new trial may be granted "when the verdict is contrary to law
or evidence?" Is a verdict contrary to the law merely be-

cause it is defective in form, or does not declare the degree where the crime is distinguished into degrees? The statute does not prescribe any definite form for the verdict of the jury, and the form is immaterial if it is expressed in plain and intelligible words, so that its meaning may be readily understood and cannot be misinterpreted to the prejudice of the defendant. But the statute is imperative in requiring the jury in certain cases, including prosecutions for murder, "to find the degree of the crime of which the defendant is guilty." Courts cannot dispense with this plain requirement of the law. It is not merely directory; it is mandatory. A verdict which fails to comply with section 284 of the Code of Criminal Procedure is "contrary to law," as indicated in section 303 of the same code, and justifies the granting of a new trial, even if it should not be held to require it. Being designed for the protection of the accused, this section should be given a fair construction to effectuate that end. Section 303 of our Code of Criminal Procedure is identical with section 1181 of the California Penal Code and with section 2192 of the Penal Code of Montana. We may then properly seek in the decisions of the Supreme Court of those States for a construction put upon this requirement in regard to the verdict of a jury which is set out in our statute (Code of Criminal Procedure, sec. 284), quoted above. This section 284 of our Code of Criminal Procedure is identical with section 1157 of the Penal Code of California and with section 2145 of the Penal Code of Montana. By section 201 of the Penal Code murder is divided into degrees, and thus falls within the purview of section 284 of the Code of Criminal Procedure above quoted. The Supreme Court of California, in 1887, in the Travers case, making a full discussion of this section of the Penal Code, uses the following words:

"The defendant was charged in the information with an attempt to commit burglary—whether in the nighttime or daytime is not stated. The degree is not specified in the information. The defendant

pleaded 'not guilty.' A trial was had. The jury rendered a verdict of 'guilty as charged,' and the court sentenced the defendant to imprisonment at San Quentin for a term of two years. The defendant appealed from the judgment, and his contention is, that the verdict is a nullity by reason of the omission to specify the degree of crime of which the jury found the defendant guilty.

"Burglary is divided into two degrees. 'Every burglary committed in the nighttime is a burglary of the first degree, and every burglary committed in the daytime is burglary of the second degree' (Pen. Code, sec. 460). 'Whenever a crime is distinguished into degrees, the jury, if they convict the defendant, must find the degree of the crime of which he is guilty' (Id., sec. 1157). Prior to the adoption of the code the statute provided that 'the jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, designate by their verdict whether it be murder of the first or second degree' (Wood's Digest, 331). The code has extended this provision to all crimes 'distinguished into degrees.' Therefore the construction given to the clause of the statute as it existed before the code, in murder cases, may guide us in construing it in its broader application. In *People v. Marquis*, 15 Cal., 38, the defendant was indicted for murder. The verdict of the jury was 'guilty as charged in the indictment.'

"The judgment was reversed. The court said: 'The statute (Wood's Digest, 331) provides that the jury shall designate in their verdict the degree of the offense. This they have not done; and the court in a capital case cannot assume that they designed from a general finding to fix the grade of the crime.'

"The judgment was reversed and the cause remanded for a new trial. In *People v. Campbell*, 40 Cal., 129, the court reversed the judgment because the verdict did not designate the degree of the crime. Under a similar statute the Supreme Court of Alabama held it to be error to pass sentence upon a verdict which did not specify the degree of murder of which the jury found the defendant guilty. The court said that the statute which required the jury to specify the degree was imperative and that it was the right of the accused to have it complied with. (*Robertson v. State*, 42 Ala., 509. To the same effect are the cases of *McGee v. State*, 8 Mo., 495; *Dick v. State*, 3 Ohio, St. 89; and *Parks v. State*, 3 Ohio, St. 101.)

"We are unable to find any case in which the contrary has been held.

"Since the adoption of the code this court held it to be error under

section 1192, Penal Code, to sentence a defendant, upon a plea of guilty to a charge of burglary, without first determining the degree. (*People v. Jefferson,* 52 Cal., 452.)

"It therefore follows that the judgment must be reversed, and here the question arises, What further order should be made? Appellant's counsel insists that we should order the discharge of the defendant under that clause of the Constitution which declares that 'no person shall be twice put in jeopardy for the same offense' (Const., sec. 13, art. 1).

"In none of the cases which we have followed thus far was there an order that the defendant be discharged from custody, but in each of them there was an order that the cause be remanded for a new trial. Since we reverse the judgment on the authority of those cases, we deem it proper to make the same orders which were made in them." (*People v. Travers,* 73 Cal., 581).

A California case, decided in 1889, in an opinion rendered by the court, settles the construction of this section in the following words:

"Appellant was tried upon an information which alleged that he feloniously, unlawfully, and with malice aforethought, killed and murdered one Philip Stump. The jury returned a verdict in these words: 'We, the jury, decide the defendant, John H. O'Neill, guilty as charged, the penalty to be imprisonment for life.' The code provides that 'whenever a crime is distinguished into degrees, the jury, if they convict the defendant, must find the degree of the crime of which he is guilty.' It has been uniformly held that a failure to specify the degree of murder under that section vitiates the verdict. (*People v. Campbell,* 40 Cal., 129.) The attorney general confesses error. Judgment and order reversed, and cause remanded for a new trial." (*People v. John O'Neil,* 78 Cal., 388).

The Supreme Court of California, in 1892, in a well-considered murder case, commenting on section 1157 of the California Penal Code, which is identical with section 284 of our Code of Criminal Procedure, says:

"The judgment must be reversed, however, because the verdict failed to find the degree of the crime. It has always been the statu-

tory law that in a murder case the verdict of guilty must designate the degree of the crime of which the defendant is found guilty; and for many years, whenever a crime is distinguished into degrees the jury, if they convict the defendant, must find the degree of the crime. (Pen. Code, sec. 1157). And it has been held here, in a number of cases, that when the degree is not found by the verdict (when the crime has degrees), the judgment will be reversed and a new trial granted. (*People v. Marquis,* 15 Cal., 38; *People v. Campbell,* 40 Cal. 129; *People v. Jefferson,* 52 Cal., 452; *People v. Travers,* 73 Cal., 581; *People v. O'Neil,* 78 Cal., 388.)'' *People v. Lee Yune Chong,* 94 Cal., 386.

The note to section 2145 of the Montana Penal Code reads as follows:

''*Specification of Degrees.*—When the offense charged is distinguished into degrees, and the jury, under instructions from the court, simply find the defendant 'guilty as charged in the indictment,' a new trial will be granted: *People v. Coch,* 53 Cal., 627; *People v. Campbell,* 40 Id., 137. See *People v. Fine,* 53 Id., 263; and *People v. Gilbert,* 60 Id., 108, infra; *Territory v. Stears,* 2 Mont., 324. And it seems this section applies where the indictment charges the crime generally without specifying the degree: *People v. Barnhart,* 29 Cal., 381. But if the indictment charges only the lowest degree of offense, as defined by the Code, a general verdict will be sufficient, though it fail to specify the degree: *People v. Fisher,* 51 Id., 319. See also *People v. Jefferson,* 25 Id., 425; *Territory v. Perkins,* 2 Mont., 467. If when the jury return their verdict it does not specify the degree, the court should order them to retire, and return a specified finding of the degree: *People v. Marquis,* 15 Cal., 38; *People v. Bonney,* 19 Id., 426. On an indictment charging the defendant with murder in the second degree, the jury may nevertheless find him guilty of murder in the first: *People v. Nichol,* 34 Id., 211. So if the jury find the defendant guilty of murder in the first degree, and do not declare in their verdict that the punishment shall be imprisonment for life, it is the duty of the court to pronounce punishment of death: *People v. Welch,* 49 Id., 174. The above section does not apply to robbery, it not being divided into degrees: *People v. Gilbert,* 60 Cal., 108. The court must not instruct the jury what degree to find; that is for the jury: *People v. Hunt,* 59 Cal., 430, citing *People v. Gibson,* 17 Id., 283; *People v. Moody,* 45 Id., 289; *Territory v. Johnson,* 9 Mont., 21; *Territory v. Manton,* 7

Mont., 162; *Territory v. McAndrews,* 3 Mont., 158; *Territory v. Stears,* supra. See also cases in 67 Cal., 350; 78 Cal., 350; 78 Cal., 388; 87 Cal., 122; 94 Cal., 379.''

It is a well-settled principle, both in American and the Spanish law, that, when a statute is adopted by one State from another, the construction put upon it by the courts of the latter is entitled to great weight in the interpretation to be given it by the courts of the former; it being presumed that the legislature had such construction in view in the passage of the act when adopting the language of the statute. But the same construction as that given by California and Montana to the statute 'quoted has been given to similar statutes in other States, Texas among the rest. We are certainly warranted in following the numerous and highly respectable authorities herein cited, especially when the reasoning is so sound and convincing as in the opinions quoted and herein set out at some length. This is the last of the reasons assigned by counsel for the appellant in seeking a reversal of the judgment of the court below; and, in view of the construction put upon laws identical with and similar to section 284 of the Porto Rican Code of Criminal Procedure, by the courts of last resort in the States referred to, the same meeting with our unqualified approval, we must find the judgment of the District Court of Humacao, rendered in this case, to be erroneous, and the same must be reversed, and the cause remanded to the court below for a new trial, in accordance with the principles announced herein.

*Accordingly Decided.*

Chief Justice Quiñones and Justices Hernández and Figueras concurred.

Mr. Justice Sulzbacher did not sit at the hearing of this case.