## THE PEOPLE *v.* COLÓN.

### APPEAL from the District Court of Ponce.

No. 175.—Decided November 4, 1909.

CRIMINAL LAW—MURDER IN THE FIRST DEGREE—DEGREE OF CRIME.—The verdict of a jury must state the degree of the crime of which it finds the defendant guilty. (*The People* v. *Rivera,* June 25, 1904; *The People* v. *Leña Verde,* April 20, 1906.) The court in this case has examined the law and the jurisprudence of England, California and Porto Rico upon this subject.

ID.—CONFESSION OF ACCUSED.—The jury may consider a supposed confession of the accused, although he claims to have acted in self-defense.

MR. JUSTICE WOLF delivered the opinion of the court.

On the sixth of January, 1908, the defendant, Juan Rosado Colón was charged with murder in the first degree, inasmuch as on the ninth of December, 1907, within the judicial district of Ponce he had, illegally, with malice aforethought, deliberately, etc., killed Francisco Cruz y Rivera with the intention of stealing from the latter the money he had. The case was tried before a jury who found the defendant guilty of the crime charged and he was, on the 28th day of February, 1908, sentenced to death.

The principal error alleged in this appeal is that the verdict fails to specify the degree of the crime of which the defendant was guilty. The verdict is as follows:

"In the District Court of Ponce, P. R. *The People of Porto Rico* v. *Juan Rosado Colón.* Murder in the first degree. We the jury, after having examined the case, declare the accused, Juan Rosado Colón, guilty of the crime with which he is charged. Ponce, P. R. February 19, 1908. Foreman of the jury, A. Subirá."

The information not only sets out facts constituting murder in the first degree, but specifically charges that fact, namely, *el fiscal formula acusación contra Juan Rosado Colón, como autor de un delito de asesinato en primer grado,* etc."

The *fiscal* of this court has very ably contended that the reference made in the verdict to the information was sufficient designation of the degree of murder with which the appellant was charged. He also contends that the case at bar is very different from either the case of *People of Porto Rico* v. *Francisco Rivera alias Panchito,* decided by this court on June 25, 1904, or the case of Leña Verde, decided in April 20, 1906.

An examination of the jurisprudence which has grown up about this matter will be useful to the consideration of the facts of this case. At common law, and I mean thereby the

common law of England, when a jury returned a verdict gen-
erally, it meant that the defendant was found guilty of the
highest degree of the crime mentioned in the indictment. It
was necessary for the jury to specify a lower degree. This
was changed by statute in, California. The statute is sub-
stantially the same as section 284 of the Code of Criminal
Procedure. In the case of *People* v. *Campbell,* 40 Cal., 129,
this matter is fully considered. There, the attorney general
of California maintained that when the murder is charged to
have been committed by means of poison, torture, or lying
in wait, which necessarily imply deliberation, and when the
verdict is that he is guilty of the crime charged in the indict-
ment, this is a sufficient designation by the verdict of the de-
gree of murder, for the reason that under the indictment he
could not lawfully be convicted of any other crime than mur-
der in the first degree, and the verdict, therefore, imports, *ex
vi termini,* that the jury finds him to be guilty of that crime.

The contention made by the attorney general of Califor-
nia was substantially the same as that made by the *fiscal* of
this court. In answer to that contention the Supreme Court
of California said that the word ''designate'' was not sus-
ceptible of the meaning which the attorney general had at-
tempted to give it, that the word did not imply that it would
be sufficient for the jury to intimate or give some vague hint
as to the degree of murder of which the defendant was found
guilty; but that such word was equivalent to ''express'' or
''declare,'' and it was evidently intended that the jury should
expressly state the degree of murder in the verdict so that
nothing should be left to implication on that point. Perhaps
it would have been possible for the Supreme Court of Cali-
fornia to have decided, when the question first arose before
it, that the reference by the jury to the indictment was equiva-
lent to the general verdict at common law and that the ref-
erence to the information satisfied the letter and spirit of the
law. But the court, as we have seen, understood the legis-
lative intention in a different manner. The statute apparent-

ly reversed the rule of law previously existing, and made it imperative that the jury should name in its verdict, the specific degree of which the defendant is guilty. The Supreme Court of California continued to follow the precedent set down in the earlier cases. (*People* v. *Travers,* 73 Cal., 581; *People* v. *John O'Neil,* 78 Cal., 388; *People* v. *Lee Yung Chong,* 94 Cal., 379.)

This question came up before the Supreme Court of Porto Rico in the case of *The People* v. *Panchito* and the jurisprudence of California was cited and followed. It is true, as the *fiscal* maintains, that the facts in the case were a little different, but the reasoning applies, and the facts of the case of *People* v. *Leña Verde,* cannot be distinguished from the case at bar. The case of Panchito is also authority to the effect that when a statute of one State is adopted in another the usual presumption is that it was adopted with the construction put upon it by the courts of the State from which the law was taken.

The case of Panchito was decided in the spring of 1904, and must have been known to the prosecuting officers of the Government for a long time. While judges of the district court should be careful to see that their verdicts follow the requirements of the statute, it is also incumbent upon the various *fiscals* to be present when the verdict is rendered, and if it fails to specify the degree, to draw the court's attention to that fact. There is some discussion of the evidence in the brief of the appellant. Some doubt arises as to whether the statement of the case is properly before us by reason of its being brought up to us on the 7th of June, 1909, while the record itself was filed on the 15th of March, 1909. In any event we do not see that the jury was swayed by passion, or prejudice, and as we have frequently decided it is the best judge of the facts. Along with the confession of the defendant there was enough evidence for the jury to find a verdict of guilty.

It is contended that there was error in convicting the defendant of murder in the first degree, if the confession was to be relied on, inasmuch as the defendant in the same confession alleged that he performed the act in self-defense. The contention is that a part of a confession should not be received and the rest rejected. Here, however, the whole confession was admitted in evidence. It does not follow because the jury believed that the defendant killed a man that they would be obliged to accept his statement of the manner in which he performed the act. Some of the witnesses, moreover, testified that appellant confessed to the homicide without mentioning that he said anything about his having done the act in self-defense. There was no error in the admission of the conclusion.

Another alleged fault is that the instructions were erroneous in that they contained the following statement:

"If a man is lying in a cart, face upwards, and afterwards is found dead, with his face and head bruised, and covered with two or three oilcloths, it is fair to presume that the deceased was sleeping."

The instructions came to us in the same manner as the statement of the case and it is doubtful whether we can consider them, especially in view of rule 76 of this court. It might perhaps, have prejudiced the defendant to allude to a person being asleep if defendant was relying on a plea of self-defense, but it isn't clear that it could. In any event the fault of this instruction can be avoided at a new trial.

For the error in the verdict the sentence must be reversed and the case sent back for a new trial.

*Reversed.*

Chief Justice Hernández and Justices Figueras, MacLeary and del Toro concurred.