EL PUEBLO *v.* RIVERA (*a*) PANCHITO.

APELACIÓN procedente de la Corte de Distrito de Guayama.

No. 3.—Resuelto en Junio 25, 1904.

ACUSACIÓN—COPIA QUE HA DE ENTREGARSE AL ACUSADO.—En el Código de Enjuiciamiento Criminal no hay precepto alguno que exija que la copia de la acusación que haya de entregarse al acusado sea firmada por el Secretario y jurada por el Fiscal, siendo solamente la original la que debe estar firmada y jurada por el Fiscal.

GRAN JURADO—TRIBUNALES INSULARES.—Las disposiciones del artículo 5 de las enmiendas á la Constitución de los Estados Unidos no tienen aplicación á los Tribunales Insulares, en los que no es necesaria la acusación de un Gran Jurado para que en ellos pueda declararse culpable á un acusado.

CONSTITUCIÓN DE LOS ESTADOS UNIDOS—TERRITORIOS.—Para que la Constitución de los Estados Unidos se entienda vigente en un Territorio, es necesaria una Ley del Congreso que así lo disponga.

ID.—TRATADO DE PARIS—LEY ORGÁNICA—ESTATUTO DE LOS ESTADOS UNIDOS.—Ni en el Tratado de Paris, ni en la Ley Orgánica se encuentra disposición alguna por la que se hayan hecho extensivas á Puerto Rico las disposiciones de la Constitución de los Estados Unidos, habiéndose dejado subsistentes todas las leyes de Puerto Rico en cuanto no se opusieren á las leyes de·los Estados Unidos que no fueren localmente inaplicables.

ACUSACIÓN—COMO DEBE FORMULARSE—La acusación habrá de comprender solo un delito, pero éste puede ser expuesto en diferentes formas, y bajo distintos cargos, y cuando se hubiere cometido usando de medios diversos, éstos pueden alegarse alternativamente en el mismo cargo, y así formulada no está sujeta á la excepción de que en ella se imputa más de un delito.

ID.—ALEGACIÓN DE HABER ESTADO EL ACUSADO ANTERIORMENTE EXPUESTO POR EL MISMO DELITO.—La alegación de haber estado el acusado anteriormente expuesto por el mismo delito, se formula oportunamente al leerse la acusación.

ID.—DESESTIMACIÓN DE LA ACUSACIÓN—FELONY—MISDEMEANOR.—El Tribunal puede desestimar la acusación de oficio, ó á moción del Fiscal, pero tal desesti-

mación constituirá un obstáculo para la formación de otro proceso por el mismo delito en los casos de *misdemeanor,* más no en los de *felony.*

Pruebas—Confesión del Acusado.—La confesión que del delito hubiere hecho el acusado á otras personas, puede ser presentada como prueba contra él, con tal que hubiere sido libre y voluntariamente hecha, sin haber sido inducido á hacerla por amenazas ó influencias indebidas, promesas de alguna autoridad, ó esperanzas de un castigo más leve ó de algún beneficio que habría de derivarse en su favor.

Id.—Testimonio de Referencia.—El testimonio de testigos que declararen sobre la confesión que de su delito les hubiere hecho el acusado, no puede estimarse como testimonio de referencia, siendo por el contrario, una prueba de carácter directo de los actos del acusado, y perfectamente admisible.

Id.—Las únicas objeciones que el acusado puede oponer á la admisión de testimonio sobre alguna confesión que de su delito hubiere hecho, son las de haberse hallado bajo coacción, al tiempo de verificarla, ó la de haber sido inducido á hacerla por esperanzas ó promesas que se le hicieran.

Asesinato—Grado del Delito—Homicidio—Instrucciones al Jurado.—En una causa por asesinato, aun cuando los hechos del caso constituyan claramente el delito de asesinato en primer grado, la Corte, no obstante, debe instruir al jurado con respecto al asesinato en primer y segundo grado y al homicidio, á fin de que el Jurado pueda hacer una consciente distinción de los distintos grados de estos delitos.

Id.—En sus instrucciones al jurado, las Cortes deben limitarse á los hechos del caso y al derecho que les sea aplicable, no debiendo instruir al jurado sobre hechos que no hayan sido probados en el juicio, ni sobre leyes que no tengan aplicación alguna al caso de que se trate.

Id.—Objeciones á las Instrucciones—Pliego de Excepciones—Apelación.—Si el acusado deseare discutir, ante el Tribunal de Apelación, las instrucciones dadas por la Corte al jurado, deberá incluir el texto de dichas instrucciones en el pliego de excepciones, ó incluirlas, en la forma adecuada, en la transcripción de autos á fin de que las objeciones contra ellas puedan ser consideradas y resueltas en la apelación.

Id.—Si el acusado no sometiera á la consideración del Tribunal de Apelación las instrucciones de la Corte en la forma adecuada, para que el Tribunal pueda proceder á discutirlas, habrá de presumirse que tales instrucciones han sido dadas en forma correcta.

Id.—Instrucciones Escritas.—Aunque el estatuto no contiene disposición alguna que exija que las instrucciones de la Corte al jurado se den por escrito, sin embargo, en los casos de pena capital, la mejor práctica es la de someter por escrito las instrucciones al jurado, para así garantizar mejor los derechos del acusado, y facilitar el trabajo del jurado en la consideración de tales instrucciones y la corrección, por el Tribunal de Apelación, de los errores que puedan contener.

Id.—Instrucciones Sometidas por los Abogados.—En casos adecuados, los abogados deben auxiliar al Tribunal al dar sus instrucciones al jurado, sometiendo á su consideración, por escrito, aquellas instrucciones que consideren aplicables al caso y necesarias para que el jurado pueda formular un veredicto correcto.

Apelación.—El Tribunal Supremo tiene facultades para considerar y resolver

todos los puntos de defensa que aparezcan de los autos y especialmente aquellos que sean esenciales al cáso de que se trate, aunque no hayan sido alegados por el acusado.

Veredicto del Jurado.—El veredicto del jurado no debe formularse verbalmente sino por escrito y estar firmado por su presidente.

Id.—El estatuto no exige una forma determinada ó especial á que el jurado deba ajustarse al emitir su veredicto, pero sí es necesario que se formule en términos claros é inteligibles, á fín de evitar malas interpretaciones que puedan perjudicar al acusado.

Id.—Grado del Delito.—Siempre que haya de hacerse distinción entre varios grados de un delito, como en los casos de asesinato, el jurado tiene que especificar, *necesariamente, el grado del delito* de que declare culpable al acusado.

Id.—Veredicto Contrario á Derecho—Nuevo Juicio.—Si el jurado, en los casos en que deba hacerlo, no determinare en su veredicto el grado del delito de que declare culpable al acusado, el veredicto es *contrario á derecho*, y en tal caso estará justificada, si es que imperativamente no procede, la concesión de un nuevo juicio.

Interpretación de Estatutos.—Es un principio bien establecido en la jurisprudencia americana y en la española, que cuando un Estado adopta un estatuto vigente en otro Estado, la interpretación que á sus disposiciones hubieren dado los Tribunales del último Estado ha de merecer gran consideración á los Tribunales del primero, al interpretar las disposiciones del mismo estatuto, presumiéndose que la Legislatura conocia tal interpretación al adoptar dicho estatuto.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. Muñoz Morales y Falcón.*

Abogado del apelado: *Sr· del Toro, Fiscal.*

El Juez Asociado Sr. MacLeary, emitió la siguiente opinión del Tribunal.

El acusado, que es el apelante en esta causa, fué acusado el día 21 de Noviembre de 1903, mediante información debidamente presentada por el Fiscal del Distrito de Humacao, que dice lo siguiente:

" El infrascrito Fiscal comparece ante el mencionado Tribunal y en debida forma respetuosamente alega: que Francisco Rivera (a) Panchito, por allá el dia 15 de Julio de 1902, dentro del dicho Distrito Judicial ilegalmente y con malicia premeditada y expresa, mató y asesinó á Severo Lorenzo á balazos y con un revolver; y el infrascrito Fiscal además alega: que el mencionado Francisco Rivera alias Panchito por allá, el día 15 de Julio de 1902, dentro del mencionado distrito judicial, ilegalmente y con malicia premeditada y expresa,

mató y asesinó á Severo Lorenzo á puñaladas y con un cuchillo; el infrascrito Fiscal además alega: que el dicho Francisco Rivera alias Panchito, en el distrito judicial, allá el día 15 de Julio de 1902, ilegalmente y con malicia premeditada y expresa, mató y asesinó á Severo Lorenzo á balazos de revolver y á puñaladas de cuchillo en la perpetración de robo intentado por dicho acusado al dicho Lorenzo; contrario á la forma, eficacia y propósito de la ley para tal caso hecha y prevista, y contra la paz y dignidad del Pueblo de Puerto Rico".

El acusado fué debidamente traido y presentado ante el Tribunal, y negó la acusación; y en el juicio fué declarado culpable por un jurado, y condenado á sufrir la pena de muerte. Contra dicha sentencia interpuso el acusado recurso de apelación para ante este Tribunal, presentándose los autos de la causa el día 30 de Enero de 1904. Dichos autos constan de treinta y cinco páginas en maquinilla y están preparados en mejor forma, y demuestran una causa mejor defendida que ninguna de las causas criminales que yo he podido observar hasta ahora, en este Tribunal. El escrito de excepciones está bien preparado y expresa bastante bien, en cuanto á claridad y precisión, los puntos en que se apoya el apelante. Para la apelación se ha empleado otro abogado, y éste ha desistido de algunos de los puntos alegados en el escrito de excepciones, y presentado en su informe oral otros que no estaban contenidos en dicho escrito. Todos los puntos que tanto en el pliego de excepciones, cuanto en el juicio oral, han sido alegados por los dos Letrados que representaron la causa en este Tribunal y en el Tribunal inferior, serán considerados, aunque no por el orden en que han sido presentados por el uno, ó el otro, de dichos Letrados. Procuraremos examinarlos con arreglo á su órden lógico, y con este objeto vamos á considerar *primero* las objeciones hechas contra la acusación. Estas son tres. La primera objeción se consigna en el pliego de excepciones sustancialmente como sigue:

" Constituido el jurado el dia dos de Diciembre, y antes de co-

menzar la práctica de las pruebas, el Letrado defensor, fundándose en el precepto del artículo 145 del Código de Enjuiciamiento Criminal solicitó se *desestimara la acusación,* porque la copia de la acusación que le fué entregada no aparece firmada por el Secretario, en la diligencia de juramento del Sr. Fiscal.''

Esta objeción no fué presentada por el abogado del procesado ante este Tribunal, pero fué discutida por el Fiscal en su alegato. Por un exámen de dicho artículo y párrafo del Código, se verá que no hay ninguna disposición por la que se exija que la copia que se entrega al acusado, esté firmada por el Secretario, ni jurada por el Fiscal. Solamente la acusación original, que se presenta al Tribunal y viene á formar parte de los autos de la causa, debe ser firmada y jurada por el Fiscal; y al examinar los autos se ve que se ha llenado este requisito: por lo tanto no hay nada en esta objeción que requiera ulterior atención de parte de este Tribunal. La segunda objeción contra la acusación fué presentada por primera vez por el Letrado defensor del apelante, ante este Tribunal, y está suscintamente expresada como sigue:

'' Existe otra razón legal importantísima que tambien invalida la sentencia. La Constitución Americana no está en efecto aplicada á Puerto Rico, pero no se puede negar que por el Tratado de Paris es esto una posesión Americana, y es harto sabido que no se puede legislar ni realizar ningún acto contrario á la Constitución Americana, que en sus Secciones 5 y 14 de las enmiendas á dicha Constitución, ordena categoricamente que nadie está obligado á contestar cargos sobre un crimen capital ó infamante por cualquier concepto, á no ser por denuncia ó acusación ante un Gran Jurado, y que no se puede privar de la vida á ninguna persona sin el correspondiente juicio de acuerdo con la Ley.''

En otras palabras, el Letrado defensor alega que las enmiendas 5ª. y 14ª. de la Constitución de los Estados Unidos, que garantizan á la persona acusada de un crimen capital ó infamante por cualquier concepto, el derecho de ser acusado por un Gran Jurado, y de ser juzgado con arreglo á un proce-

dimiento legal en debida forma, están vigentes en Puerto Rico. Estos puntos repetidas veces han sido discutidos y decididos negativamente por este Tribunal, especialmente en la causa de Hobart S. Bird, ex parte, y en la de Pedro Díaz, ex parte, vistas y decididas por este Tribunal en proce limientos de *Habeas Corpus*. En numerosos casos se ha declarado que hasta ahora no se ha hecho extensiva á Puerto Rico, la Constitución de los Estados Unidos, y que una declaración afimativa, por parte del Congreso, es necesaria para poner esta Isla bajo la completa protección de la Constitución Americana. Se puede hacer referencia á las causas referentes al arancel Insular en 182 U. S· pp. 1 *et seq.* y á la causa de *Mankichi* contra *Hawaii,* 190 U. S. p. 197. En todas estas causas se hace referencia á una lista de decisiones que determina esta cuestión. En la causa de Mankichi, aunque en la Ley del Congreso por la cual se anexaron las Islas Hawaii á los Estados Unidos estaba dispuesto que las Leyes Municipales de dicha república habian de continuar vigentes, excepto en los casos en que eran contrarios á la Constitución de los Estados Unidos, se declaró, sin embargo, que la intención no habia sido de exigir, por dicha ley, que los criminales debian de ser procesados en virtud de la acusación presentada por un Gran Jurado, ó juzgados y declarados culpables por el veredicto unánime de un pequeño jurado, hasta que se adoptó la ley del Congreso que dió á dicha república, como parte de la Nación Americana, un gobierno territorial. Dicha causa era mucho más favorable para el acusado en la misma, que la causa que ocupa á este Tribunal, porque ni en el Tratado de París, ni en la Ley Orgánica, por la que se da á esta Isla un Gobierno Civil, se ha dicho nada con respecto á hacer extensivas á la misma, las disposiciones de la Constitoción de los Estados Unidos; sino que todas las leyes que anteriormente habían existido en esta Isla fueron continuadas en vigor, excepto en cuanto á aquellas disposiciones de las mismas que estaban en contradicción con las leyes de los Estados Unidos no inaplicables aquí.

Por consiguiente, si Mankichi no podia reclamar el beneficio
de las referidas enmiendas de la Constitución de los Estados
Unidos, Rivera ciertamente no puede hacerlo, porque el de-
recho del primero á dichos beneficios, es mucho más claro que
el del segundo.

Desde que escribí el párrafo anterior, me ha llamado la
atención una causa que noté en un ejemplar de fecha reciente,
del New York Sun.    Es la causa de Dorr y O'Brien en la cual
se interpuso recurso de apelación contra la sentencia dictada
por el Tribunal Supremo de las Islas Filipinas, en virtud de
una convicción por libelo, en cuyo juicio se habia pedido un
juicio por jurado, reclamando este derecho bajo la Constitu-
ción de los Estados Unidos y que fué negado á los acusados
con arreglo á las leyes locales.    El Sr. Juez Day, hablando en
nombre de la mayoría del Tribunal Supremo de los Estados
Unidos, declara que el Congreso, al establecer leyes para los
territorios de Ultramar, pertenecientes á los Estados Unidos,
no está obligado á establecer el sistema del jurado mediante
legislación afirmativa; y que el poder concedido al Congreso
de gobernar un territorio, cuyo poder lo implica el derecho
de adquirirlo, no obliga á dicho cuerpo á establecer leyes para
un Territorio cedido, que no forme parte de los Estados Uni-
dos en virtud del efecto de la Constitución, un sistema de leyes
que comprenda el derecho á un juicio por jurado, y que la
Constitución, no confiere, sin legislación y por su propio es-
fuerzo, tal derecho, á un territorio que se encuentre en seme-
jánte situación.    Esta decisión es tan aplicable á Puerto Rico,
como lo es á las Islas Filipinas, y puede considerarse como
resolviendo en definitiva esta cuestión que por tanto tiempo
ha sido discutida, de acuerdo con los principios repetidamente
proclamados desde la Sala de Justicia de este Tribunal.

La última objeción hecha contra la acusación es que en
ella se imputa al acusado más de un delito, puesto que en pri-
mer lugar le acusa de haber matado y asesinado á Severo Lo-

renzo con un revolver y en segundo lugar de haber matado y asesinado á Severo Lorenzo con un puñal, y en tercer lugar de haber matado y asesinado á Severo Lorenzo con un puñal y un revolver. Esta objeción no fué presentada por el abogado del apelante en su informe oral ante este Tribunal, pero fué contestada por el Fiscal en su alegato. Se verá por un exámen del párrafo segundo del artículo 153 del Código de Enjuiciamiento Criminal, en que se funda el abogado del apelante, que la presente causa no está comprendida en las prescripciones de dicha ley. Este artículo debe considerarse en relación con el 77 del mismo Código, que dispone que la acusación contendrá solamente un delito, pero este mismo delito puede expresarse en diferentes formas y bajo distintas enumeraciones; pero cuando el delito haya sido cometido por el uso de diferentes medios, pueden alegarse dichos medios alternativamente· Esta acusación fué redactada con arreglo á la bien conocida práctica de los Estados Unidos de presentar el mismo delito bajo diferentes aspectos y bajo diferentes enumeraciones; y no está sujeta á la objeción de que en ella se imputa al acusado más de un delito. Solo se enuncia un delito, aunque se expresa de diferentes modos, cada uno de los cuales podría probarse y tal vez los tres. Por consiguiente la acusación presentada contra el acusado en esta causa, fué redactada en debida forma y no está sujeta á ninguna de las objeciones hechas contra la misma, ya sea en el Tribunal inferior, ya sea en este Tribunal.

El *segundo* punto alegado por el apelante en esta causa es que él habia sido expuesto anteriormente por el mismo delito, habiéndose presentado anteriormente una acusación contra él y otras personas que el Fiscal tuvo á bien de sobreseer, formulando una nueva acusación contra este acusado solo. Esta alegación de que el acusado habia sido expuesto anteriormente por el mismo delito fué debidamente presentada en 23 de Noviembre ó sea la época en que se hizo aparecer al acusado ante el Tribunal, siendo desestimada dicha alegación. La misma

alegación fué nuevamente presentada el día 4 de Diciembre
al pedir el acusado la celebración de un nuevo juicio, siendo
de nuevo desestimada por el Tribunal. Esto consta en el
pliego de excepciones en la página 33 de los autos. Este
punto fué arguido también por el Letrado defensor del ape-
lante en este Tribunal, y contestado por el Fiscal. El párrafo
cuarto del artículo 169 del Código de Enjuiciamiento Crimi-
nal dice lo que sigue:

"Si el acusado hubiere sido convicto ó absuelto de una acusación,
ó estado en peligro alguna vez por la misma, tal convicción, absolu-
ción ó peligro constituiría excepción perentoria á la nueva acusación,
por el delito imputado en la anterior, ó por tentativa de cometerlo, ó
por cualquier delito necesariamente comprendido en la misma, de que
hubiera podido ser convicto en virtud de dicha acusación anterior."

Esta alegación fué presentada en debida forma bajo el
párrafo cuarto del artículo 162; pero estos artículos deben
considerarse en relación con los 451 y 452 del mismo Código,
que dicen lo que sigue:

"Artículo 451.—El Tribunal, ya por su propio acuerdo ó ya á
petición del Fiscal y en pro de la justicia, puede decretar el sobresei-
miento de una causa ó de una acusación. Las causas del sobreseimiento
deben exponerse en el auto que al efecto se dicte, el cual se insertará
en el acta del proceso.
Artículo 452.—Un auto para el sobreseimiento de una causa, según
lo prescrito en este capítulo, imposibilita la formación de otro proceso
por el mismo delito, si éste es un 'misdemeanor' (delito menos
grave); pero no así cuando el delito es un felony (delito muy grave)."

El Tribunal, ya por su propio acuerdo ó ya á petición del
Fiscal, puede decretar el sobreseimiento de una causa ó de
una acusación. Las causas del sobreseimiento deben expo-
nerse en el auto que al afecto se dicte.: Una causa que haya
sido sobreseida, imposibilita la formación de otro proceso por
el mismo delito, si éste es un "misdemeanor" (delito menos
grave); pero no así cuando el delito es un "felony" (delito

muy grave). Por supuesto, siendo la presente una causa por asesinato, el crimen denunciado es un ''felony'', especialmente en vista del hecho de que el acusado ha sido condenado á muerte y por lo tanto el artículo 452 es aplicable al anterior sobreseimiento y no imposibilita la formación de este proceso.

El *tercer* punto alegado por el abogado del apelante es que las confesiones que se supone hizo este último á varios testigos, fueron utilizadas como pruebas contra él. Se trató de establecer este punto en el Tribunal inferior y en este Tribunal, aunque la cuestión no fué presentada de modo muy claro y está basada en el artículo 164 del Código de Enjuiciamiento Criminal, que no tiene relación alguna con esta cuestión, sino que dispone la forma en que puede hacerse la confesión de culpabilidad, si el acusado deseare hacerla. Este error por parte del abogado ha sido inducido por la custumbre que existe entre los abogados locales de referir toda cuestión y todo punto alegado en la defensa, ó en la presentación de una causa, á determinado artículo del Código. No hay nada en el Código de Puerto Rico con respecto á confesiones que haga el acusado, y por consiguiente es imposible para el abogado designar precisamente el artículo que pueda haber sido infringido en el juicio de la causa. Sin embargo, el procesado tiene derecho á los beneficios de la ley en este respecto de la causa, y la omisión por parte de su abogado de presentar claramente el asunto no se utilizará en su contra en esta discusión. Ha sido bien determinado por los autores elementales en materia de pruebas, bajo el sistema de la ley común, que las confesiones de un acusado sobre el delito de que se le acusa, pueden ser utilizadas contra él, con tal que las haya hecho libre y voluntariamente, sin que sobre él se haya ejercido coacción para obtenerlas, ni indebida influencia, ni que se le hayan hecho promesas por parte de alguna persona revestida de autoridad, ni dádole la esperanza de un castigo más leve, ni de ningún otro beneficio que habia de derivar de tales confesiones. Un exámen del pliego de excepciones en esta causa

demostrará que los diferentes testigos que declararon, con res-
pecto á dichas confesiones, eran el Alcalde de Guayama, el
Juez de Paz, un Teniente de la Policía y un Guardia. Aunque
los testigos eran personas de quienes podrá decirse que están
revestidas de autoridad, no se hicieron promesas al acusado,
ni amenazas, y él no se hallaba preso al tiempo de hacer las
confesiones y puestos que éstas las hizo libre y voluntaria-
mente á los testigos, y que por lo tanto cualesquiera que sean
las confesiones que haya hecho eran del todo admisibles como
prueba contra él, y el Tribunal al desestimar las objeciones
hechas contra esta prueba, no incurrió en ningún error de que
el acusado pueda quejarse. El Juez Cooley discute este
asunto muy habilmente en su obra sobre limitaciones consti-
tucionales, del modo siguiente:

"Pero es un requisito mucho más importante el que el procedi-
miento por el cual se trate de establecer la culpabilidad no sea inquisi-
torial. Una excelencia ó ventaja especial que el sistema de juicio con
arreglo á la ley común tiene sobre el sistema que ha prevalecido en
otros paises civilizados, consiste en el hecho de que el acusado no está
nuncá compelido á hacer declaraciones en contra de sí mismo. Por
más que hubo mucho de inhumano y cruel en aquél sistema, reconoció
enteramente el carácter peligroso y completamente indigno de con-
fianza de las confesiones obtenidas por coacción y nunca se ha podido
tachar dicho sistema de que bajo él se hayan dictado sentencias ba-
sadas sobre semejantes confesiones.

Es la ley, en algunos de los Estados, que cuando una persona es
acusada de un delito y conducida ante un Juez Instructor que, des-
pués de haberse oido los testigos de cargo, el acusado pueda también
hacer una declaración sobre el hecho que se le imputa y que esta
declaración pueda utilizarse en su contra en el juicio, si se supone que
tiende á establecer la culpabilidad. Pero hay que advertir primera-
mente al preso que no tiene obligación de contestar á cualquiera pre-
gunta que se le dirija, á menos que quiera contestarla y que cualquiera
cosa que diga ó haga debe ser enteramente voluntaria. También debe
permitirsele ser dirigido y asistido por un abogado; y si ese privilegio
le fuere denegado, podrá ser motivo suficiente para desacreditar cuales-
quiera declaraciones que haya hecho en su perjuicio. Sin embargo,
cuando se haya cumplido con la ley y no aparezca que se haya empleado

ninguna especie de coacción, la declaración hecha por el acusado es una prueba que puede usarse en su contra, en el juicio, y merece generalmente que se le dé gran importancia. Y en cualquier otro caso, excepto en el de traición, la confesión hecha por el acusado podrá admitirse como prueba para establecer su culpabilidad, con tal que no esté acompañada por circunstancias que disminuyan su importancia y eficacia para la convicción del acusado.

Pero para hacer admisible la confesión en todo caso, debe constar que fué hecha voluntariamente y que no se han empleado motivos de esperanza ó temor para inducir al acusado á la confesión. Debe haber pruebas claras y satisfactorias de que no se haya amenazado ni adulado al acusado para conseguir de él la admisión de cosas que muy probablemente eran falsas. En la excitación producida por una acusación de un crímen, serenidad y presencia de ánimo, no deben esperarse sino de muy pocas personas; y por firme que sea nuestra convicción de que nadie confesará un crímen horroroso, del cual no es culpable, los protocolos de tribunales criminales suministran pruebas abundantes de lo contrario. Si las confesiones pudiesen probar un crímen, fuera de toda duda, ningún hecho que jamás ha sido castigado criminalmente resultaría mejor probado que hechicería ó brujería; y las ejecuciones judiciales que se han justificado con tales confesiones debían constituir una solemne amonestación contra una confianza demasiado grande en las confesiones como prueba de culpabilidad en cualquier caso, "Cómo ha observado varias veces el Sr. Juez Parke," durante una de las sesiones del Tribunal del Circuito en que presidía, "no se debe dar demasiado importancia á las pruebas referentes á las supuestas manifestaciones de una parte, puesto que sucede con frecuencia, no solamente que el testigo ha mal comprendido lo que dicha parte dijo, sino que alterando involuntariamente algunas de las expresiones realmente usadas por la misma, dá á dichas manifestaciones un efecto que está en completa contradicción con lo que dicha parte dijo en realidad. Y cuando la confesión es completa y positiva, sucede tal vez frecuentemente que ha sido hecha bajo la influencia del terrible miedo causado por la acusación y en la esperanza de que mediante la confesión se puedan evitar algunas de las consecuencias que serían probables en ¹ caso de que se negase con persistencia la culpabilidad.

Una confesión, por sí sola, no debia constituir una prueba suficiente del *corpus delicti*. Debe haber otras pruebas de que realmente se haya cometido un crímen; y la confesión debe admitirse solamente con el objeto de poner al acusado en conección con el delito. Y si se ha ejercido alguna influencia sobre las esperanzas ó temores del acusado

para inducirle á hacer dicha confesión, este hecho bastará para impedir que se admita la confesión; siendo tan extricta la regla sobre este punto, que se ha declarado que el solo decirle al preso que será mejor para él que confiese, equivale á ofrecerle un aliciente para la confesión, especialmente cuando esto se ha dicho por la persona que lo tenga bajo su custodia y debe hacer inadmisible la manifestación que se haya obtenido mediante la oferta de tal aliciente. Sin embargo, con tal que se hayan hecho manifestaciones antes de la confesión que probablemente habían de borrar el efecto de las incitaciones ó alicientes ofrecidos para la confesión de modo que no pueda suponerse que el acusado haya obrado bajo su influencia, podrá admitirse la confesión como prueba, pero la demostración de este punto debe ser muy satisfactoria para el Tribunal Supremo de que las esperanzas y los temores del preso ya no estén bajo la influencia de los alicientes primeramente ofrecidos.''

Se podrá hacer referencia á las siguientes autoridades que también consignan en sus obras las reglas de la ley común con respecto á las confesiones hechas por un acusado y su uso como prueba contra el mismo.

Hopt v. Utah 110 U. S. 574.
People v. McMahon, 15 N. Y. 384.
People v. Thomas 9 Mich. 314.
Williams v. Commonwealth 27 Cratt. 997.
Jordan v. State 32 Miss. 382.
Rannels v. State 28 Ark. 121.
Miller v. People 39 Ill. 457.
State v. Holt 121 Mass. 61.
State v. Curtis 97 Mass. 574.
State v. Mitchell 117 Mass. 431.
Corley v. State 50 Ark. 305.
Thompson v. Commonwealth 20 Gratt. 724.
State v. Lawhorne 66 N. Y. 538.
Thompson v. State 19 Ft. App. 503.
State v. Carvey 28 La Ann. 955.
Greenleaf on Evidence Sec. 214 and cases cited.

El testimonio de los testigos que detalladamente comunicaron al Tribunal las confesiones que les había hecho el acu

sado no puede considerarse como testimonio de referencia, si no que constituye una prueba directa de los actos del acusado que puede utilizarse contra él en el juicio. Si el acusado deseare excluir las confesiones que se ofrezcan presentar contra él, debia demostrar que están comprendidas en una de las excepciones establecidas por la ley, según la interpretan los autores comentaristas. Esto quiere decir que él debía demostrar que se hallaba bajo coacción, ó que obraba bajo la influencia de esperanzas ó promesas, que se le habían dado para el caso de que hiciera una confesión.

La *cuarta* objeción presentada por el apelante en esta causa y que alegó tanto en el Tribunal inferior, cuanto en este Tribunal, es que el Juez que juzgó la causa cometió errores en las instrucciones que dió al Jurado, por cuanto dejó de explicar y definir los diferentes grados de asesinato y el delito de homicidio. De lo que revelan los autos resulta que el acusado, si es que era culpable, lo era de asesinato en primer grado; porque el asesinato de Severo Lorenzo fué cometido con el objeto de robarle, y mediante acecho. Sus agresores lo acecharon en el camino de Guayama y después de haberlo matado con tiros de revolver y puñaladas le robaron el dinero y los cheques que llevaba encima, constituyendo de esta manera dicho delito claramente un asesinato en primer grado, según ha sido definido por nuestras leyes. Véase el Código Penal artículo 201, Estatutos Revisados, p. 519. No obstante estos hechos el Tribunal debía haber dado instrucciones al jurado, definiendo el delito de asesinato en primer grado, asesinato en segundo grado, y tal vez el de homicidio, y debía haber explicado dichos delitos al mismo. El Tribunal en cada causa debía limitarse, en sus instrucciones al jurado, conforme á la ley y los hechos, y aplicar la ley á los hechos, para que el Jurado sea completamente instruido dentro de los límites de la causa; y el apartarse de la causa, según consta en los autos é instruir al jurado con respecto á hechos que no han sido probados, ó sobre leyes que no son pertinentes á la causa que se

está juzgando, solamente tiende á confundir el ánimo del jurado y á hacer tal vez que dé un veredicto erroneo. Pero la ley claramente exije al jurado de señalar en su veredicto si declarare culpable al acusado, el grado de asesinato de que se le juzgue culpable y para que el jurado haga ésto, es preciso que el jurado sea debidamente instruido por el Tribunal. Véase el Código de Enjuiciamiento Criminal, artículo 284, el cuál se citará más adelante. Por consiguiente está claro que el Juez debía haber dado al jurado la instrucción exigida por el acusado. Pero no hay nada en los autos que demuestre cuales han sido las instrucciones dadas por el Juez; por lo que revelan los autos, puede ser que haya instruido al Jurado definiendo asesinato en primer grado, asesinato en segundo grado, y homicidio y que haya señalado todos los detalles de la prueba necesaria para constituir dichos delitos, después de una completa explicación y que haya dejado al jurado el resolver si el acusado era culpable de alguno de dichos grados ó clases de homicidio, ó si no era culpable del todo. Si el acusado hubiera deseado presentar ante este Tribunal, en su apelación, objeciones contra las instrucciones dadas al jurado por el Tribunal sentenciador, debía haber incluido el texto de dichas instrucciones en su pliego de excepciones, ó haberlo presentado de algún otro modo de manera que pudiera haber sido considerado y revisado por este Tribunal. Habiendo dejado de hacer esto, debe presumirse que las instrucciones dadas al jurado, por el Tribunal sentenciador, eran correctas y no se puede presentar con éxito una queja contra las mismas. Obsérvase de paso que, aunque esto no conste positivamente, podrá deducirse de indicaciones que existen en los autos, que las instrucciones dirijidas por el Tribunal al jurado fueron dadas oralmente. Si tal fué el caso es preciso decir que no debía fomentarse semejante práctica. Aunque no hay nada en la ley que exija en absoluto que las instrucciones dadas por el Tribunal deben ser por escrito, sin embargo, esta práctica es muchísimo mejor en todas las causas de muerte. Los aboga

dos debían en todos los casos en que proceda, ayudar al Tribunal en el desempeño de este deber, sometiendo á este último, para su consideración, borradores de las instrucciones que crean aplicables al caso y necesarias para guiar al jurado á llegar á un veredicto correcto. En juicios de ''felonies'' menos graves y ''misdemeanors'' instrucciones verbales son admisibles; pero en causas de muerte dichas instrucciones debian darse por escrito y leerse al jurado para proteger más cuidadosamente los derechos del acusado, para ayudar más eficazmente al jurado en la consideración de la causa en sus deliberaciones y para facilitár más la corrección de errores ocurridos en las mismas, en la revisión por el Tribunal de apelación.

La *quinta* objeción se dirige contra la forma del veredicto dado por el jurado bajo las instrucciones del tribunal. Con respecto á este punto se podrán hacer las mismas observaciones que se han hecho con respecto á la tercera objeción mencionada en la presente. No se ha presentado claramente á este Tribunal si el acusado se queja del veredicto ni se ha demostrado en qué consiste la queja que pueda tener con respecto al mismo; pero con arreglo á las leyes estatutarias de esta isla y especialmente, con arreglo á la ley de 12 de Marzo de 1903, consideramos que es nuestro deber tomar en consideración todos los puntos de defensa que aparezcan en los autos, especialmente los que se relacionan con la base de la causa; y revisaremos el veredicto del jurado para ver si el procesado ha sido privado de cualquier derecho substancial. Se ha informado á este Tribunal de que el jurado, en el presente caso, al dar su veredicto, simplemente pronunció, por conducto de su Presidente, en plena sesión del Tribunal, la palabra ''Culpable''. Las mismas observaciones que se han hecho anteriormente en la presente con respecto á instrucciones verbales dadas por el Juez al Jurado, son aplicables á este método de dar veredictos. El veredicto del jurado debe ser escrito en debida forma, por los miembros del mismo, en

el cuarto donde se hallen reunidos, y debe ser firmado por su
presidente, para que todos expresen su conformidad con el
mismo y para que no haya duda, ni cuestión, con respecto á su
texto ó sentido.   Especialmente es esto necesario en causas de
muerte.   Nadie debia perder su vida sino despues de haberse
cumplido extrictamente con todas las formalidades prescritas
por la ley; pero examinemos las leyes referentes á veredictos.
El artículo 284 del Código de Enjuiciamiento Criminal de
Puerto Rico dice lo siguiente:

"Artículo 284.—Cuando hubiere que hacer distinción entre varios
grados de culpabilidad, al apreciar un delito, el jurado deberá deter-
minar, si declarare culpable al reo, el grado del delito cometido por
éste."

En el presente caso resulta que el veredicto del jurado con-
sistió en la sola palabra "CULPABLE", sin decir si el acusado
era culpable de asesinato en primer grado, de asesinato en
segundo grado, ó de homicidio.   ¿Estuvo el veredicto, por este
motivo, comprendido en el sentido del párrafo sexto del artí-
culo 303 del Código de Enjuiciamiento Criminal, que dice que
podrá concederse la celebración de nuevo juicio, si el veredicto
fuere contrario á derecho ó á las pruebas?   ¿Es el veredicto
contrario á la ley, simplemente por ser defectuoso en su forma,
ó por no declarar el grado en los casos en que el delito está di-
vidido en grados?   La ley no prescribe ninguna forma definitiva
para el veredicto del jurado, y la forma no importa, si el vere-
dicto está expresado en palabras claras é inteligibles, de ma-
nera que pueda comprenderse fácilmente, y que no se le pueda
interpretar falsamente, en perjuicio del procesado.   Pero la
ley es perentoria al exigir al jurado en ciertas causas, inclu-
sive las instruidas por asesinato, de declarar el grado del crí-
men del cual el acusado es culpable.   Los Tribunales no pue-
den menos de llenar este requisito tan claro de la ley.   Este re-
quisito no tiene por objeto simplemente guiar al Tribunal, sino
que es un mandato.   Un veredicto en el cual se deje de cum-

plir con las disposiciones del artículo 284 del Código de Enjuiciamiento Criminal es "contrario á la ley," según lo indica el artículo 303 del mismo Código, y justifica la concesión de un nuevo juicio, aún en el caso de que se estimara que no lo exijía. Puesto que dicho artículo ha sido establecido para la protección del acusado, debe dársele una interpretación liberal para que realice este fin.    El artículo 303 de nuestro Código de Enjuiciamiento Criminal es idéntico al 1181 del Código Penal de California, y al 219 del Código Penal de Montana. Podremos, por lo tanto, propiamente, buscar•en las decisiones de los Tribunales Supremos de aquellos Estados una interpretación dada á este requisito, con respecto al veredicto de un jurado, que se halla consignado en nuestra ley (Código de Enjuiciamiento Criminal, artículo 284) arriba citado.    Este artículo 284 de nuestro Código de Enjuiciamiento Criminal es idéntico al artículo 1157 del Código Penal de California y al 2145 del Código Penal de Montana.    Por el artículo 201 del Código Penal el crímen de asesinato es dividido en grados y de este modo se halla comprendido en las prescripciones ó condiciones contenidas en el artículo 284 del Código de Enjuiciamiento Criminal, anteriormente citado.    El Tribunal Supremo de California en 1887, en la causa de Travers, al discutir detenidamente este artículo del Código Penal, se expresa en las siguientes palabras:

"El reo fué acusado, en la información, de la tentativa de cometer un robo con escalamiento, si de noche ó de día, no se ha dicho.    El grado no ha sido especificado en la información.    El acusado negó la acusación.    Se celebró el juicio.    El jurado dió un veredicto de "culpable conforme á la acusación" y el Tribunal condenó al acusado á prisión en San Quintin, por el término de dos años.    Contra esta sentencia el acusado interpuso recurso de apelación y la alegación que hace, es, que el veredicto es una nulidad por razón de la omisión de es pecificar el grado del delito, del cual el Jurado le declaró culpable.

Se divide el robo, con escalamiento, en dos grados.    "Cada robo con escalamiento cometido de noche, es robo con escalamiento en primer grado; y cada robo con escalamiento cometido de dia, es robo con es-

calamiento en segundo grado.'' (Código Penal, Artículo 460) ''Cuando hubiere que hacer distinción entre varios grados de culpabilidad, al apreciar un delito, el jurado deberá determinar si declarare culpable al reo, el grado del delito cometido por éste.'' (Id. Art. 1157), Antes de la adopción del Código, la ley disponía que ''el Jurado, ante el cual ha de juzgarse á una persona acusada de asesinato, deberá, si declarare á dicha persona culpable del citado delito, expresar en su veredicto, si es asesinato en el primer ó el segundo grado.'' (Wood's Digest, 331.) El Código ha hecho extensiva esta disposición á todos los delitos, ''en que se haga distinción entre varios grados. Por lo tanto, la interpretación dada á la cláusula de la Ley, tal como existió con anterioridad al Código, podrá guiarnos al interpretar dicha cláusula en *su* amplificada aplicación. En la causa de *People* v. *Marquis,* 15 Cal. 38, el reo fué acusado de asesinato. El veredicto del Jurado era ''culpable conforme á la acusación.''

Se anuló la sentencia El Tribunal dijo: La ''Ley (Wood's Digest, 331) ''dispone que el jurado debe expresar en su veredicto, el grado del delito. El Jurado no ha hecho esto; y el Tribunal, en una causa de muerte, no puede presumir que la intención del mismo haya sido de indicar el grado del delito mediante un veredicto general.''

Se anuló la sentencia y se devolvió la causa al Tribunal sentenciador para la celebración de nuevo juicio. En la causa de *People* v. *Campbell,* 40 Cal. 129, el Tribunal anuló la sentencia porque en el veredicto no se expresó el grado del delito. Con arreglo á una ley parecida la Corte Suprema de Alabama declaró que era quebrantamiento de forma el dictar sentencia fundada en un veredicto en el cual no se especificaba el grado del delito de asesinato de que el jurado habia declarado culpable al acusado. El Tribunal dijo que la ley que exijia al Jurado el especificar el grado, era perentoria, y que el acusado tenia derecho á que se cumpliera con la misma. (*Robertson* v. *State,* 42 Ala. 509.) Declaraciones en el mismo sentido, se encuentran en las causas de *McGee* v. *State,* 8 Mo. 495; *Dick* v. *State,* 3 Ohio St. 89; y *Parks* v. *State,* 3 Ohio St. 101.

No hemos podido encontrar ninguna causa en que se haya hecho una declaración en sentido contrario.

Desde la adopción del Código, este Tribunal ha declarado que constituye quebrantamiento de forma, bajo el artículo 1,192 del Código Penal, el sentenciar á una persona acusada de robo con escalamiento, por razón de su confesión de dicho delito, sin haber préviamente determinado el grado.—*People* v. *Jefferson,* 52 Cal. 452.

Resulta, por lo tanto, que debe anularse la sentencia, y ahora surge

la cuestión: ¿Además de ésto, que providencia ha de dictarse? El Letrado defensor del apelante, insiste en que debemos ordenar la soltura de éste con arreglo á la cláusula de la Constitución que dispone que "nadie será puesto en peligro dos veces, por un mismo delito."— *Const.*, Sec. 13, Art 1.)

En ninguna de las causas que hemos seguido hasta ahora, ha habido una orden disponiendo que se ponga en libertad al acusado; pero en cada una de ellas habia una providencia, disponiendo que se devolviese la causa al Tribunal sentenciador, para la celebración de nuevo juicio. Puesto que nosotros anulamos la sentencia, fundándonos para ello en la autoridad de aquellas decisiones, estimamos que procede dictar las mismas órdenes que se dictaron en las causas de referencia."—*People v. Travers*, 73 Cal. 581.

Un dictámen emitido por el Tribunal en una causa de California, fallada en 1889, determina la interpretación de esta sección, en las siguientes palabras:

"El apelante fué juzgado con motivo de una acusación, en que se alegaba que él, alevosamente, ilegalmente y con malicia premeditada, mató y asesinó á un tal Philip Stump. El Jurado dió veredicto en estas palabras: "Nosotros, el jurado, declaramos al acusado John H. O'Neill, culpable conforme á la acusación debiendo imponérsele la pena de reclusión perpétua." El Código dispone que "cuándo hubiere que hacer distinción entre varios grados de culpabilidad al apreciar un delito, el jurado deberá determinar si declarare culpable al reo, el grado del delito cometido por éste". Se ha declarado uniformemente que la omisión de especificar el grado de asesinato bajo aquella sección, invalida el veredicto. (*People* v. *Campbell*, 40 Cal. 128).

El Fiscal General confesó quebrantamiento de forma.

Se anuló la sentencia y la orden y se devolvió la causa al Tribunal sentenciador para la celebración de nuevo juicio: *People* v. *John O'Neill*, 78 Cal. 388".

El Tribunal Supremo de California, en una causa por asesinato, bien considerada, comentando la sección del Código Penal de California, que es idéntica al artículo 284 de nuestro Código de Enjuiciamiento Criminal, dice: .

"Sin embargo, debe anularse la sentencia porque se omitió en el veredicto expresar el grado del delito. La ley estatutaria ha sido siempre que en una causa por asesinato, el veredicto de culpable debe expresar el grado del delito del que se declara culpable al acusado; y durante muchos años el Código Penal ha dispuesto de un modo general que "cuando hubiere que hacer distinción entre varios grados de culpabilidad al apreciar un delito, el jurado deberá determinar, si declarare culpable al reo el grado del delito cometido por éste". Código Penal, Sección 1,157). Y se ha declarado en este Tribunal, en un número de causas que cuando no se expresa el grado en el veredicto, (cuando el delito tiene grados) se anulará la sentencia, y se concederá la celebración de nuevo juicio. (*People* v. *Marquis,* 15 Cal. 38; *People* v. *Campbell,* 40 Cal. 129; *People* v. *Jefferson,* 52 Cal. 452; *People* v. *O'Neill,* 78 Cal. 388; *People* v. *Lee Tune Chong,* 94 Cal. 386.")

La nota referente al Artículo 2145 del Código Penal de Montana, dice lo siguiente:

"*Especificación de grado.*—Cuando el delito denunciado está dividido en grados y el jurado bajo las instrucciones del Tribunal, simplemente declara al acusado "culpable conformo á la acusación", se concederá la celebración de nuevo juicio: *People* v.*Coch,* 53 Cal. 627; *People* v. *Campbell,* 40 Cal. 129; *People* v. *Jefferson,* 52 Cal. 452: y *People* v. *Gilbert,* 60 Id. 108 infra; *Territory* v. *Stears,* 2 Mon. 324. Y parece que esta sección es aplicable cuando la acusación denuncia el delito de un modo general, sin especificar el grado: *People* v. *Barnhart,* 29 Cal. 381. Pero si la acusación denuncia solamente el grado más bajo del delito, con arreglo á la definición hecha en el Código, un veredicto general será suficiente, aunque deje de especificar el grado: *People* v. *Fischer,* 51. 319. See also *People v. Jefferson,* 25 Id. 245; Territory v. Perkins, 2 Mont. 467. Si el jurado al dar su veredicto, no especifica el grado, el Tribunal deberá ordenarle que se retire y dé un veredicto, especificando el grado: *People* v. *Marquis,* 15 Cal. 38; *People* v. *Bonney,* 19 Id. 426. Con motivo de una acusación en la cual se acusa al reo de asesinato en el segundo grado, el jurado podrá sin embargo, declararlo culpable de asesinato en el primer grado: *People v. Nichol,* 34 Id. 211. De igual modo si el jurado declara al acusado culpable de asesinato en el primer grado y no declara en su veredicto que la pena ha de ser reclusión perpétua, es el deber del

Tribunal, de pronunciar la pena de muerte: *People* v. *Welch,* 49 Id. 174.

La sección anterior no es aplicable al delito de robo, por no estar dividido en grados: *People* v. *Gilbert,* 60 Cal. 108.

El Tribunal no debe instruir al jurado sobre el grado del que ha de declarar culpable al acusado; esto lo debe determinar el jurado: *People* v.*Hunt,* 59 Cal. 430, citing *People* v. *Gibson,* 17 Id. 283: *People* v. *Woody,* 45 Id. 289; *Territory* v. *Johnson,* 9 Mont. 21; *Territory* v. *McAndrews,* 3 Mont. 158; *Territory* v. *Stears, supra.* See also; *People* v. *Price,* 67 Cal. 350*; People* v. *Travers,* 73 Cal. 580; 87 Cal. 122; 94 Cal. 379''.

Es un principio bien establecido, tanto en la ley Americana como en la Española, que cuando un Estado adopta una ley de otro, la interpretación que los Tribunales de este último Estado hayan dado á dicha ley merece gran consideración en la interpretación que los Tribunales del primer Estado hayan de dar á la referida ley; presumiéndose que la Legislatura al adoptar el texto de las citada ley tenia la intención de que habia de darse tal interpretación.  Pero la misma interpretación que en California y Montana se ha dado á la ley anteriormente citada, se ha dado á las leyes semejantes, en otros Estados y entre ellos en Tejas.  Nosotros estamos ciertamente autorizados para seguir las numerosas y altamente respetables autoridades citadas en la presente, especialmente cuando el razonamiento es tan sano y convincente, como lo es en las decisiones que se han citado y discutido detenidamente en la presente. Este es el último de los motivos alegados por el Abogado del apelante al solicitar la revocación de la sentencia del tribunal inferior; y en vista de la interpretación que los Tribunales de última instancia, en los Estados anteriormente citados, han dado á las leyes idénticas y á otras parecidas al artículo 284 del Código de Enjuiciamiento Criminal de Puerto Rico, y cuya interpretación tiene nuestra entera aprobación, debemos declarar que la sentencia dictada por èl Tribunal de Distrito de Humacao es errónea y debe anularse y que se debe devolver

la causa al Tribunal inferior para la celebración de un nuevo juicio de acuerdo con los principios enunciados en la presente.

*Resuelto de conformidad.*

Juez concurrentes, Sres. Presidente Quiñones y Asociados Hernández y Figueras.

El Juez Asociado Sr. Sulzbacher no formó Tribunal en la vista de este caso.