## THE PEOPLE *v*. PAZ.

### APPEAL from the District Court of Arecibo.

No. 37.—Decided February 27, 1907.

MURDER IN THE FIRST DEGREE—TRANSFER OF CASE TO ANOTHER COURT—DISCRETION OF THE COURT.—In accordance with the provisions of Section 173 of the Code of Criminal Procedure, amended March 10, 1904, a court has discretionary power to order the transfer of a criminal case to the most convenient court to reach, although it may not be near the district in which the cause originated, when a trial therein is objected to on legal grounds.

TRANSFER OF CRIMINAL CASES—LEGAL PROVISIONS GOVERNING SAME.—Where the *fiscal* moves for the transfer of a criminal case to another district, and the counsel for the accused makes no objection, the court is not bound by defendant's consent, because in criminal cases the jurisdiction of an incompetent court cannot be extended, nor is it permissible for the parties to submit to the jurisdiction of a particular court.

SUBMISSION OF PARTIES.—In civil cases the parties to the controversy are the only persons interested and they may, with entire propriety, stipulate to submit to the jurisdiction of a particular court, and such a legal agreement, which they are empowered to make, and which does not operate to the prejudice of anyone, cannot be complained of; but in criminal cases the interests involved are different and the principle of submission cannot be therein applied.

VALID VERDICT—FAILURE TO USE THE WORD "GUILTY".—Where a verdict is drawn in terms so clear as to leave no room for doubt and the intention of the jury can be perfectly understood from the wording, the verdict cannot be held to be null and void merely because it does not contain the word "guilty", and the omission thereof is not a fundamental defect impairing the substantial rights of the accused.

ACCESSORY BEFORE THE FACT—ACCESSORY AFTER THE FACT.—Section 36 of our Penal Code includes within the meaning of the term author of, or principal in a crime, the person who himself directly commits the crime as well as the person who, not being present at the commission thereof, aids or abets the person who commits the same. An accessory after the fact conceals the crime or harbors and protects the person guilty of the commission thereof, knowing that the crime has been committed.

INFORMATION CHARGING DEFENDANT AS PRINCIPAL—CONVICTION AS ACCESSORY TO THE SAME CRIME.—An information charging the defendant with murder in the first degree, as the author of a crime, because he had advised and encouraged its commission, must specify that the defendant with full knowledge of the commission of the crime concealed it from the authorities, by what means, and if he harbored or protected the defendant as the person who committed the same, and it must also specify the manner in which he so concealed the crime or protected the person committing same, in order that he may be legally convicted as an accessory to the crime of voluntary manslaughter.

INFORMATION AGAINST AN ACCESSORY—ESSENTIAL ALLEGATIONS.—Although it is
true that a principal and an accessory are guilty of the same crime, the rules
of pleading require that an accessory be accused as such and not as the prin-
cipal.

ERRONEOUS INSTRUCTION IN REGARD TO ACCESSORIES—RULE OF CONSTRUCTION.—
The definition of the term accessory given in the Penal Code of Texas sub-
stantially agrees with section 37 of our Penal Code, and in accordance with
the principle that, where the same reasons exist, the statute should be con-
strued the same, we accept the jurisprudence of the Supreme Court of that
State, where it is held that a person accused as principal cannot be convicted
as. an accessory, and that in a trial under such information, it is error to
instruct the jury as to the accessories.

NEW TRIAL.—Where instructions given to the jury on a point of law are errone-
ous, or the verdict is contrary to law, the judgment appealed from must be
reversed and a new trial ordered.

The facts are stated in the opinion.

*Mr. Manuel F. Rossy* for the appellant.

*Mr. Rossy, fiscal,* for the respondent.

MR. JUSTICE FIGUERAS delivered the opinion of the court.

This case comes up from the District Court of Arecibo and
was tried before a jury under the following information:.

"The prosecuting attorney files an information against José Mo-
rales, *alias* 'Yare-Yare', Miguel Lojo y Vidal, *alias* 'Chencho', Pedro
Vidal Goico, José Reyes Alvarez, Prudencio Vidal Estruch, Rafael
Pesante Gómez and Antonio Paz y Santos for the crime of murder
in the first degree (felony), committed as follows: The said José
Morales, *alias* 'Yare-Yare', between 9 and 10 p. m. of July 2, 1905,
in the town of Añasco, within the judicial ·district of Mayagüez,
Porto Rico, treacherously and with malice aforethought, and showing
a perverted and malignant heart, did unlawfully kill José Adolfo
Pesante while the latter was sitting in a chair on the sidewalk in
front of the drug store of Rafael Arrillaga, for which purpose he
made use of a knife or dagger, inflicting upon him a wound between
the ninth intercostal space above the hepatic region, affecting the
liver, from which he died on the following day. The aforesaid Miguel
Lojo y Vidal, *alias* 'Chencho', Pedro Vidal Goico, José Reyes Alvarez,
Prudencio Vidal Estruch, Rafael Pesante Gómez and Antonio Paz y
Santos, are principals in the crime committed, inasmuch as with
malice aforethought they advised and encouraged José Morales, *alias*
'Yare-Yare', to commit the aforesaid murder in the manner above
described. This act is contrary to the law in such case made and

provided and against the peace and dignity of The People of Porto
Rico.—Benjamin J. Horton, District Attorney.

"The above information is based upon the testimony of witnesses
examined under oath, and I solemnly believe that there is just cause
for the filing thereof with this court.—Benjamin J. Horton, District
Attorney.

"Sworn to and signed before me this 8th day of August, 1905.—
Franco Llavat, Secretary of the District Court of Mayagüez."

As stated by counsel for the defense in his brief before the
Supreme Court, folio 4, the prosecuting attorney of Maya-
güez requested the dismissal of proceedings against Antonio
Vidal Goico, José Reyes Alvarez, Antonio Vidal Estruch and
Rafael Pesante Gómez.

This is no doubt the reason why Antonio Paz y Santos
here appears as the only one prosecuted, despite the fact of
his being included in the information together with the others
hereinbefore specified.

The trial having been held, the jury rendered the following
verdict:

"We of the jury, and in our name the undersigned foreman, find
that the defendant, Antonio Paz, is an accomplice to the crime of vol-
untary manslaughter.    Arecibo, March 22, 1906.—Fernando Suria."

The Arecibo court, in view of the foregoing verdict, ad-
judged the defendant guilty "of the crime of accomplice to
voluntary manslaughter", and set March 28, 1906, for the
reading of the sentence.

On said day, in compliance with the law, the defendant
was "informed of the nature of the charge against him, of
his plea of not guilty and of the chief incidents of his process,
including the verdict of the jury".

Counsel for the defendant asked that no judgment be de-
livered, which petition being overruled, as also the motion
for a new trial, judgment was rendered sentencing the defend-

ant to six months of imprisonment in the penitentiary of the Island, at hard labor, and to pay the costs of the proceedings for the crime of complicity in voluntary manslaughter, with such other pronouncements as were called for.

From this judgment an appeal was taken, and here we have the record and a bill of the exceptions entered during the trial by counsel for Antonio Paz, which bill has been approved by the judge of the Arecibo court, with certain explanations which were assented to by said appellant who filed his brief with this Supreme Court and orally ratified the same, praying that on the merits of the exceptions taken the judgment appealed from be reversed and he be discharged, or that he be granted a new trial.

The fiscal of this Supreme Court, in view of the merits of two of the exceptions taken, sustains the second of the prayers made by the defendant, which appear in the foregoing paragraph.

We shall consider, in the first place, those exceptions that we believe to be more important and, of course, on their decision depends the question as to whether or not it will be necessary to consider the others tending to the same object.

This cause was brought in the District Court of Mayagüez, but the prosecuting attorney there, by motion, under his own affidavit and with the testimony of the marshal, asked that the cause be transferred to the Ponce court, because in that of Mayagüez, owing to the great sensation it had produced, it would be impossible, during the current term, to complete a jury, nor could a just and impartial trial be obtained in the Aguadilla court, which was the nearest one, because the town of Añasco, where the crime is alleged to have been committed and where reside the defendant and the witnesses, had, until recently, formed part of the district of Aguadilla. Counsel for Antonio Paz agreed with the prosecuting attorney upon the transfer of the case to Ponce, but the Mayagüez court directed its removal to that of Arecibo. Before the latter, Antonio Paz, alleged that it was incompetent, on the ground

that the Ponce court was the only one having jurisdiction because upon this point the parties had agreed and because it was of easier and more economical access than that of Arecibo. He therefore asked that the case be again transferred to that of Mayagüez; but the Arecibo court decided that it was competent to take cognizance of the case, and against this refusal an exception was taken.

This question must be decided in accordance with the provision of section 173 of the Code of Criminal Procedure, as amended by an Act of the Legislative Assembly, approved March 10, 1904. (Laws of Porto Rico, 1904, p. 61, English edition.)

In view of said provision, it must be admitted that the action of the judge of the District Court of Mayagüez in transferring the case to Arecibo was correct, for, according to the law, he was obliged to make the transfer to the adjoining district whose court of justice was nearest and of easiest access; but the Aguadilla court having been discarded because of reasons alleged against it which proved satisfactory to the Mayagüez court, and said Aguadilla court being doubtless the one in which concurred the conditions of closer proximity and easier access, it is evident that the duty imposed by the law ceased from that moment, and the decision of the point was left to that discretion which the same law allows, said discretionary power being made use of in designating the Arecibo court; and nothing is there in the record to show that there was any abuse of this power. Wherefore, we repeat that this criterion must be sustained in the present case:

But it is argued by counsel for the defendant in the brief filed with this court that in this criminal case there should have been applied by analogy the principle established in section 76 of the Code of Civil Procedure—namely, that, "in accordance with its jurisdiction, a court shall have cognizance of the suit to which the maintenance of all kinds of actions may give rise, when the parties may have agreed to submit the suit to a decision of the court"; and inasmuch as the de-

fendant was in accord with the prosecuting attorney as to the removal of this case to the Ponce court, he claims that this agreement should have been respected.

Such a conclusion is not admissible from any point of view.

Section 8 of the Code of Criminal Procedure expressly states that "the jurisdiction of an offense shall be in the district court of the district where the offense has been committed".

It is a general rule that in criminal matters the jurisdiction of an incompetent court cannot be extended, and this is why our Code of Criminal Procedure does neither recognize nor authorize the submission of the parties to the jurisdiction of a specific court, the reason being, no doubt, that in criminal matters the jurisdiction has been established, not only having in view the interest of the offenders and the offended, but also that of the community.

This is why we see that even in cases where a cause may be transferred before trial from one court to another, a conciliation between the private interest of the presumed offender and the public interest of the community always prevails.

In civil matters the litigants are the only parties interested, and they may, without any objection whatsoever, agree upon such admission, and against this authorized and lawful agreement, whereby no one is prejudiced, nobody may complain, but in criminal matters the interests to be looked after are distinct, and the principle of submission cannot be applied thereto.

Counsel for the defendant, after the verdict was rendered, prayed that no judgment of conviction be delivered for the following reasons:

"1. Because the jury gave an illegal verdict, inasmuch as the defendant is not found 'guilty', as required by section 283 of the Code of Criminal Procedure.

"2. Because the verdict of the jury states that the defendant is an accomplice to voluntary manslaughter, whereas the defendant was charged solely and exclusively with murder in the first degree.

"3. Because complicity involves a special and direct charge, after the trial of the principal, for the purpose of ascertaining the relation of the complicity with respect to the principal crime.

"4. Because, in rendering said verdict, it is clearly to be inferred that the jury's intention was to find in favor of the defendant upon the issue, or, in other words, that he is not the perpetrator of a murder in the first degree, in which case the court must give a judgment of acquittal.

"5. Because the jury rejected the evidence of the prosecution tending to show that the defendant had committed a murder in the first degree, and this self-same evidence cannot serve to adjudge him guilty of complicity when the prosecution failed to prove the relation of that complicity with the principal crime.

"6. Because the district court is incompetent to take cognizance of the case, in which it has rendered the verdict under discussion, for the reason set forth in a motion upon this particular."

The court held as follows:

"As to the first ground, the court is of opinion that the verdict given by the jury is substantially good; and this is borne out by the jurisprudence of the Supreme Court of California in the case of *The People* v. *Perdue,* 48 Cal., 425, wherein the verdict reads: 'We the jury find a verdict of homicide,' and in the case of *The People* v. *McCarty,* 48 Cal., 557, in which the following verdict was rendered: 'We, the undersigned jury, find a verdict of murder in the second degree.' Both verdicts, which were pronounced good, are less clear and intelligible than the one given in the present case by the jury in the process against Antonio Paz. The second ground must be rejected, because the defendant may be convicted of a lesser offense included in a greater one. Nor is the third ground sufficient according to section 93 of the Code of Criminal Procedure. Neither is the fourth ground admissible for the reasons stated in rejecting the second; and both reasons are strengthened by the judgment rendered in the case of *The People of Porto Rico* v. *José de Thomas,* in which after having been charged with murder in the first degree, the defendant was convicted of being an accomplice to homicide. The fifth ground cannot be considered, because the weighing of the evidence is left solely to the discretion of the jury. And the sixth ground, because, before this, upon a motion of the defendant asking that the case be returned to the District Court of Mayagüez, this court decided that such motion did not lie and that

it declares itself competent; and the grounds of said decision are made applicable to this case. For these reasons the court overrules defendant's motion that no judgment be rendered.''

An exception to this decision was taken.

Subsequently the same counsel filed a motion for a new trial, which reads as follows:

"The defendant, Antonio Paz, requests the district court that it grant him a new trial, because the court charged the jury erroneously as to the point of law that, notwithstanding the fact that the charge was of murder in the first degree, said jury could find the defendant guilty of complicity to murder or homicide, provided the jury understood that the evidence was sufficient for such conviction and not for a verdict as principal; and because the verdict is contrary to law, for the reason hereinbefore stated, and because the verdict of complicity does not correspond to the charge, and should have been the object of a special direct accusation, such as the finding of the class of crime committed by the principal; and also because the verdict is contrary to the evidence which attempted to show that the defendant was a principal, the same being insufficient for the purpose of a verdict of complicity as it was insufficient to show that he was a principal. The cases invoked are those mentioned under paragraphs 5 and 6, section 303 of the Code of Criminal Procedure, which grant a new trial on such cases.''

This request was also denied by the court, and the corresponding exception was taken.

It cannot be said that the verdict is void because it does not expressly contain the word "guilty". The omission of the word is not a fundamental defect which impairs the substantial right of the defendant, when the verdict is indited in such clear terms as to leave no room for doubt, the words thereof interpreting exactly the intention of the jury. This is so in the present case.

What section 289 of the Code of Criminal Procedure prohibits is the giving of a judgment of conviction when the jury has not expressly convicted the defendant upon the issue, and such conviction is perfectly defined and expressed in the

words: "We find that the defendant, Antonio Paz, is an accomplice to the crime of voluntary manslaughter."

We set aside what, in the first motion, refers to the competency of the Arecibo court, because this question has already been studied and decided by us in the sense that said court is the one competent to take cognizance of this case.

We must now examine whether, upon the information copied at the beginning hereof, a verdict of "complicity" could have been given, or, in other words, whether upon an information against a person as a principal to a crime can a verdict be given against him as an accomplice to the same crime; whether the judge erred in instructing the jury that they could reach such conclusion if it seemed to them that it was so shown by the evidence; and, lastly, whether the verdict given in this case against Antonio Paz, and under such circumstances, is contrary to law or to the evidence, these being the grounds of the motion for a new trial, which was denied, and even of the motion praying that judgment be not rendered.

When in the Code of California the distinction existed of accessory before the fact, the principal and accomplice were held to be guilty of the same crime; but it was also held that the rules of pleading required that the accomplice should be accused as such and not as a principal, and it was also made clear that even though an accessory before the fact can, under the laws of the State of California, be tried, convicted and punished as a principal, yet the accusation must specify that he aided in the commission of the crime, and must show the particular manner in which his aid was given. In this sense the following decisions were rendered: *The People* v. *Valencia,* 43 Cal., 555; *The People* v. *Campbell,* 40 Cal., 141; *The People* v. *Frim,* 39 Cal., 75.

But section 31 of the Code of California, which substantially agrees with section 36 of ours, includes as principals both the one who directly commits the offense and the one who, not being present at the execution of the act, aids and abets

in its commission. This is why the jurisprudence derived
from said section and from section 971, which corresponds to
section 93 of our Penal Code, is understood to establish that
in the accusation against those who have participated in a
felony, either directly committing it or aiding in the perpe-
tration thereof, no statement of any fact whatsoever is needed
other than such as are necessary in the accusation against
the principal. (*The People* v. *Roselle,* 78 Cal., 84; *The Peo-
ple* v. *Nolan,* 144 Cal., 75, 79.)

I hold this doctrine to be consistent with the provisions
of the Penal Code to which it refers.

But section 37 of our Penal Code reads:

"All persons who, after full knowledge that a felony has been
committed, conceal it from the proper authorities, or harbor and
protect the person charged with or convicted thereof, are accessories."

Thus we see that we have also the distinction of "acces-
sory after the fact", and the necessary acts of execution con-
stituting complicity, besides being subsequent to the commis-
sion of a crime, are absolutely distinct from the acts of
execution committed by the principal. The latter commits
the crime himself or advises or encourages its commission
(section 36 of our Penal Code), the accessory conceals the
crime, harbors and protects the guilty one, after full knowl-
edge that the crime has been committed (section 37 afore-
said).

Thus when a person is accused of having intentionally
committed the crime, or having aided or encouraged in its
commission, he may go perfectly prepared with his defense
and evidence to destroy the elements of that accusation; but
it is impossible for him to be prepared to clear himself from
a charge of which he may be wholly ignorant, if not expressly
stated—namely, that subsequently to the crime, and knowing
that it had been committed, he had concealed it or harbored
or protected the guilty one. The acts which determine the
character of either one or the other of the participators are

so distinct as to time and the nature thereof that the acts of the accomplice cannot be inferred from those of the principal.

And it cannot be urged that section 93 of the Code of Criminal Procedure solves these difficulties, because, in my opinion, said provision means only that an information specifying the acts which determine the material principal in the crime, is sufficient for the purpose of convicting the same person of having advised or encouraged the commission thereof. And this is so, because in either case the participator is legally held to be a principal, and he already knows how he is to conduct his defense.

I am of the opinion that informations should be noble and frank, and this no doubt is why section 82 of the Code of Criminal Procedure says that in order to consider an information sufficient it is necessary that "the act or omission charged as the offense be clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended".

From this and other rules of allegation there can be no doubt as to the soundness of the doctrine laid down in the first three decisions of the Supreme Court of the State of California, cited above; and in the present case, therefore, the information should have specified that Paz, with full knowledge of the commission of the crime, had concealed it from the authorities, and by what means he did so; and if he harbored or protected the accused as material principal, it should also specify in what particular manner he had committed the act of concealment or protection.

It is true that, according to section 286 of the Code of Criminal Procedure, the jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense, or in other words, that the lesser offense is included in the greater one.

But here we are not dealing with a crime of blood of less gravity, necessarily included in the greater one of murder in the first degree, which is the one referred to in the information, the question being as to the different elements of execution characterizing a participator in a crime, according as he be principal or accomplice, because, as laid down by the Supreme Court of California in the case of *The People* v. *Valencia,* 43 Cal., 555, aforesaid, the principal and the accomplice are guilty of the same crime, but the rules of pleading require that the accomplice be indicted as such, and not as principal, with which doctrine I am thoroughly in accord.

And now, studying this point in Wilson's Texas Criminal Statutes, we find on page 47 a definition of accomplice which substantially agrees with section 37 of our Penal Code, except the final paragraph of the former which does not appear in the latter.

"Section 86.—An accomplice is one who, knowing that a crime has been perpetrated, conceals the guilty party, or affords him any other assistance with a view to his escaping arrest or trial, or preventing the execution of the judgment. But no person who aids a criminal in making or preparing his defense before the courts, or who endeavors to secure his release upon bail, although he may afterwards escape, shall be considered an accomplice."

Thus does the Texas Code define this class of participators in crimes.

Now then, construing this provision, the jurisprudence of the Supreme Court of said State has declared that .

"A person indicted as principal, cannot be convicted as an accomplice, and that in a trial under such charge (that of being principal), an error is committed in instructing the jury upon complicity." (*McKeen* v. *State,* 7 Tex. Ap., 633, Bk. IV; *Fruitt* v. *State,* 8 Tex. Ap., 152; *Simms* v. *State,* 10 Tex. Ap., 159; *Bean* v. *State,* 17 Tex. Ap., 70, Bk. V, notes 225; *Golden* v. *State,* 18 Tex. Ap., 639, 640, Bk. V, Tex. notes 286; *Phillips* v. *State,* 26 Tex. Ap., 247, 248, 8 Am. St. Rep., 471, 9 S. W., 557; *Dawson* v. *State,* 38 Tex. Cr., 56, 31 S. W., 599; *Rix* v. *State,* 33 Tex. Cr., 358, 359, 26 S. W., 505.)

This being so, by giving this sound doctrine due consideration, if but the respectable authority from which it proceeds and upon the principle that where the same reason exists, the construction must be the same, we logically arrive at the conclusion that Antonio Paz Santos, indicted as principal, could not be convicted as accomplice, and we must also conclude that the judge of the Arecibo court erred in instructing the jury as follows:

"So that you will examine all of that evidence and see whether in reality it is well proven that 'Yare-Yare' was advised or incited to commit a crime, or if, knowing that he had committed a crime, Antonio Paz hid, harbored or protected him from the authorities, or whether there is no evidence of any of these things."

And further on he says:

"So then you can render a verdict as principal of murder in the first degree, or of voluntary or involuntary manslaughter, or also as *accomplice or accessory* to any of these crimes."

Counsel for Antonio Paz requested in a petition that certain instructions should be given to the jury, with a view to explaining to them that it would be unjust to render a verdict as accomplice when said Paz had been indicted as principal; but the judge refused to give these instructions and wrote his refusal on the back of the petition as attested by the bill of exceptions duly approved. So that the error was left standing which undoubtedly influenced the mind of the jury and induced them to give a verdict of complicity.

Synthetically, the information before us is insufficient to convict Antonio Paz as accomplice, because there are in it technical omissions which tended materially to prejudice his rights. (Section 82 of the Code of Criminal Procedure.)

The judge erroneously instructed the jury upon a point of law and the verdict, also, is contrary thereto, and in these cases, which are paragraphs 5 and 6 of section 303 of the Code

of Criminal Procedure, it is proper to quash the verdict and judgment appealed from and order a new .trial, or to take any other action in accordance with the law, with no special taxation of costs. And as the other exceptions taken tend to the same object, there is no need of considering them.

*Reversed.*

Chief Justice Quiñones and Justices Hernández and Mac-Leary concurred.

### CONCURRENT OPINION BY MR. JUSTICE MACLEARY.

In this I concur with the Justice Ponente in that part of his opinion which holds the District Court of Arecibo to have properly had jurisdiction of the case. I also concur with him in holding the verdict of the jury to be in substantial compliance with the law, and sufficient under the California decisions. Were it not for the authority of those decisions, I might take a different view. It is certainly the better practice that the jury should use the word "guilty" or "not guilty" in their verdict. I further hold the accusation in the case to be sufficient. It sets out that the said Antonio Paz y Santos and others are principals in the crime committed, inasmuch as they maliciously and premeditatedly counseled and incited the said José Morales to the commission of the murder aforesaid, in the form expressed above. This is sufficient to charge them as accomplices or accessories before the fact, but it is not sufficient to charge them as accessories after the fact. Taking this view of the accusation, the court committed an error in that part of his charge in which he said:

"So that you will examine all of the evidence and see whether in reality it is well proven that 'Yare-Yare' was advised or incited to commit a crime, or, if knowing that he had committed a crime, Antonio Paz hid, harbored or protected him from the authorities, or whether there is no evidence of any of these things.

"So you can give a verdict finding guilty as the author or principal of the crime of murder in the first or second degree, or of volun-

tary homicide, or involuntary homicide, or as accomplice or accessory, or of any of them."

Under this instruction the defendant could have been convicted if he hid, harbored or protected Yare-Yare from the authorities, of the commission of the crime. It may be that the jury meant to find the defendant guilty of being an accessory after the fact. If they did, this verdict was not based on a proper allegation in the indictment.

Then, inasmuch as the court went beyond the allegations in giving his instructions to the jury, I believe that the judgment should be reversed and the case remanded to the District Court of Arecibo for a new trial.

With these explanations I am willing to sign the judgment of this court, which is in substantial compliance with the views herein expressed.